# SCHOOL DIST. NO. 14 IN FREMONT COUNTY v. SCHOOL DIST. NO. 21 IN FREMONT COUNTY

(No. 1996; April 19, 1937; 67 Pac. (2d) 192)

(Rehearing denied August 31, 1937)

For the defendant and appellant, there was a brief and the cause was argued orally by *A. H. Maxwell* of Lander.

374

For the respondent, the cause was submitted upon the brief of *F. B. Sheldon, Jr.* of Riverton.

Blume, Chief Justice.

School District No. 14 in the County of Fremont was established on June 8, 1932. Its territory previously was part of School District No. 21, except that a small portion was taken from School District No. 38. In the fall of 1932, some of the expenses of the new district were paid by School District No. 21. The directors of the new district, however, believed it best that the funds expected at that time from the general county taxes and from the state should be divided immediately. They also believed it best that whatever apportionment of property and credits the law provided should be made at that time. This also was the opinion of the county superintendent of schools of Fremont County. She accordingly called in the directors of both districts and caused them to enter into an agreement, on October 23, 1932. That agreement, omitting the signatures, is as follows:

"Lander, Wyoming
October 23, 1932.

This agreement, entered into the 23rd day of October, 1932, between the boards of trustees of School Districts No. 21 and 14, respectively, witnesseth:

Whereas the joint property of Districts No. 21 and 14 before division has a total valuation of $8728.09 as evidenced by the attached statement, which is hereby accepted as correct by both parties for purposes of division, and

Whereas district No. 21 has about 28% and district No. 14 has about 72% of the assessed valuation of the combined districts; and

Whereas the trustees of both districts are desirous of arriving at a mutual agreement without recourse to expensive and annoying litigation and after full and free conference, they have agreed as follows:

District No. 21 agrees to pay, and district No. 14 agrees to accept as full settlement the sum of $1307.25

to be paid as follows: $425.00 on or before April 1st, 1933; $425.00 on or before April 1st, 1934; and $457.25 on or before April 1st, 1935.

And it is further agreed that both parties shall enter this agreement upon the minutes of their districts as a part thereof.

It is further agreed that this agreement if and when ratified by the Honorable Judge of the District Court of Fremont County, shall forever bar either party from instituting or prosecuting any suit at law based upon the division of property as herein agreed upon.

In view of the above, all parties pray the Honorable Court to ratify this agreement."

The statement of assets attached to the agreement showed that at that time there were in School District No. 21 seven schools, valued at the sum of $6800; cash on hand $1365.63; a bus, valued at $250, unexpired premium insurance, $310.46, making a total of assets of School District No. 21, before the division, of $8726.09. Three of the schools were located in District No. 14, valued at $3300, which was subtracted from the total. The taxable property of School District No. 21, after the division, was stated at $184,864.06. The taxable property of School District No. 14, after the division, was stated as $481,166.28. In other words, the assessed valuation of School District No. 14 was approximately 72%, and the assessed valuation of No. 21 (after the division) was approximately 28% of the combined assessed valuation of the two districts. While it does not appear from the record just exactly how the sum of $1307.75, mentioned in the agreement, was arrived at, it was approximately 72% of the public property, including credits, of District No. 21 at the time of the division, after giving it credit for the three school houses located in District No. 14. The agreement above mentioned was filed in the district court of Fremont County, and confirmed ex parte.

District No. 21 refused to pay as it had agreed, and this action was brought to compel it to do so. The

district court rendered judgment in favor of the plaintiff and against the defendant for the sum of $1748, and from this judgment the defendant has appealed.

1. Appellant claims that the agreement in this case, upon which suit was brought, was not authorized by statute and is therefore void. Counsel for the respondent argues that the legislature has, in the case of a division of a school district, provided for an apportionment of the indebtedness according to the assessed valuations in the respective districts and that, accordingly, this "yard-stick" should be used also in dividing the property and the money on hand at the time of the division. It is however, stated in 56 C. J. 269 as follows:

"In the absence of an applicable statutory provision to the contrary, it is a general rule that when a school district or other local school organization is divided or a part is detached, the territory so detached, being attached to another district or included in a district newly created, and the old district retaining its existence, such old district retains all its rights, powers, privileges and property, and all its moneys and funds on hand or receivable."

The principle is applicable, of course, also in case of division of a county, and was recognized by this court in the case of County Commissioners of the County of Laramie v. County Commissioners of the County of Albany, 1 Wyo. 137. That case was appealed to the Supreme Court of the United States, in which the question was discussed at length. 92 U. S. 307. The court, in that case, quoted from Windham v. Portland, 4 Mass. 389, decided in 1808, which seems to be one of the earliest cases upon the subject, and in which it was said, discussing the division of a county:

"If a part of its territory and inhabitants are separated from it by annexation to another, or by the erection of a new corporation, the former corporation still retains all its property, powers, rights and privileges, and remains subject to all its obligations and duties,

unless some new provision should be made by the act authorizing the separation."

The United States Supreme Court, in continuing its discussion in the case above mentioned, further stated in part:

"Decisions to the same effect have been made since that time in nearly all the States of the Union where such municipal subdivisions are known, until the reported cases have become quite too numerous for citation. Nor are such citations necessary, as they are all one way, showing that the principle in this country is one of universal application. Concede its correctness, and it follows that the old town, unless the legislature otherwise provides, continues to be seized of all its lands held in a proprietary right, continues to be the sole owner of all its personal property, is entitled to all its rights of action, is bound by all its contracts, and is subject to all the duties and obligations it owed before the act was passed effecting the separation * * *. Regulation upon the subject may be prescribed by the legislature, but, if they omit to make any provision in that regard, the presumption must be that they did not consider that any legislation in the particular case was necessary. Where the legislature does not prescribe any such regulations, the rule is that the old corporation owns all the public property within her new limits, and is responsible for all debts contracted by her before the act of separation was passed. Old debts she must pay, without any claim for contribution; and the new subdivision has no claim to any portion of the public property except what falls within her boundaries, and to all that the old corporation has no claim."

We have found no case announcing a contrary rule. Thus it was held in Munhall Borough School District v. Mifflin Township School District, 207 Pa. 638, that when the legislature provides for apportioning the money, but no other property, the apportionment must be confined to money. The court in part said:

"Express provision is made for ascertaining the amount of money which the new district shall pay to the old, in case of its having an undue proportion of

property within its bounds. But the former contingency (that of dividing other property) seems not to have been contemplated. * * * It is not for us to give reasons for the legislative action, but it is apparent that, in forming a new district, the situation is fully open to the view of those interested. It is not forced out of the old district—it goes out presumably for its own benefit, and its interests can be properly protected, and its proportion of the real estate and movable property of the old district can be secured to it, if deemed important, by so adjusting the lines of division. But, however that may be, we have before us nothing more than the construction of a statute, which, by its terms, in so far as it relates to the subject-matter of the plaintiff's claim, gives it no right to demand from the defendant payment for any excess of school property remaining with it, after the lines of the new district were drawn."

It is apparent, accordingly, that no apportionment of any property whatever is valid in this case, unless the legislature has made provision therefor. The only statute bearing upon the subject is Chapter 150 of the Session Laws of 1921, now contained in Section 99-901, Rev. St. 1931. That chapter, in so far as material here, including its title, is as follows:

"An Act providing that Chapter 92 of the Wyoming Compiled Statutes, relating to the apportionment shall apply to the apportionment of indebtedness of school districts. Be It Enacted by the Legislature of the State of Wyoming: Apportionment When District is Divided. Section 1. That whenever any school district shall be divided into two or more parts, the credits or the indebtedness of such district shall be apportioned between the several districts in the same manner that indebtedness or credits are apportioned when a county is divided, as provided in Chapter 92 Wyoming Compiled Statutes of 1920" etc.

In order to determine, accordingly, what, if any, property shall be divided when a new school district is created and how it shall be divided, it is necessary to turn to the law providing for apportionment when a

county is divided, as mentioned in Chapter 92, Compiled Statutes of 1920, now contained in Chapter 29, Article 6, of the Revised Statutes of 1931, being Sections 29-601 to 29-606 inclusive. It may be interesting to note that the first law upon that subject was approved on December 15, 1877, as shown by page 54 of the Session Laws of that year. The law then enacted is substantially Section 29-601, Rev. St. 1931, and merely provided that in case of a division of a county, the new district should be held liable for the payment of a just and equitable proportion of the indebtedness of the old county. The act related to indebtedness alone, and nothing more. It made no provision whatever for taking into consideration any property or credits of the old county. Further provision was made by Chapter 32 of the Session Laws of 1882, now contained, without any substantial change, in Section 29-602 to 29-606 of the Revised Statutes of 1931. Section 29-602 makes reference only to the apportionment of indebtedness. The new county is thereby compelled to assume the same proportion of the old county's indebtedness which the assessed value of the real and personal property of the detached territory bears to the assessed value of the real and personal property of the original county. The next section is the first section which makes any reference to the public property and the money and the credits of the old county, and provides that a report shall be made to the court thereof. Section 29-605 then provides:

"It shall be the duty of said court to which such report is made or the judge thereof in vacation to determine upon the basis hereinbefore stated the proportion of the existing indebtedness which such new county shall bear *after deducting its proportion in the same ratio of the value of all public property, moneys and credits of the original county.*"

It is clear, we think, from what appears above, that when a county is divided an apportionment can take

place only in case an indebtedness exists at the time of the division. Public property, moneys and credits possessed by the old county at that time can be considered only as an offset, and nothing more. There is no provision for an apportionment independent of the existence of indebtedness, and the new county can get no benefit from any property or credits or moneys of the old county other than by way of an offset. There is nothing in Chapter 150, Session Laws of 1921, above quoted, relating to the creation of a new school district, which indicates that it is intended to go beyond the like provisions relating to counties. It may be noted that the title of Chapter 150, supra, mentions indebtedness alone. The apportionment of credits and indebtedness must be made in the same manner in which indebtedness and credits are apportioned when a county is divided, and inasmuch as no apportionment whatever can be made in case of the division of counties except only when an indebtedness exists, it seems clear that the same condition must exist for an apportionment when a new school district is created out of an old one. It is agreed, in the case at bar, that District No. 21 had no indebtedness. None was attempted to be apportioned in this case. Hence, no apportionment of any kind was authorized. The agreement made in this case was, accordingly, beyond the power of the Board of School District No. 21 to make. That board has only such powers as are specially conferred upon it by constittuional and statutory provisions, or powers which are incidental to those expressly conferred. 56 C. J. 294-295. No statutory provision has been pointed out which would authorize the agreement in suit in this case. The fact that it was submitted to the court and was approved ex parte, could add nothing to its force. No judgment upon the agreement was, accordingly, authorized. The cases of School District No. 3 v. School District No. 2, 29 Wyo. 80, 210 Pac. 562,

and Board of Commissioners of Park County v. Board of Commissioners of Big Horn County, 25 Wyo. 172, 166 Pac. 674, contain nothing which is inconsistent with this conclusion.

Counsel for the respondent argues, as above mentioned, that no good reason exists why the rule of apportionment applicable to indebtedness should not, in equity, apply to assets. That would perhaps be true if these assets had been derived from special taxation. The record does not show that to be true. It may be that they were derived from the general county levy for the benefit of schools, and from the state. If that is true, no such division of funds and property as was made in this case would be justified even from an equitable standpoint, for the record indicates that after School District No. 14 was formed the latter was entitled to approximately 4/11 and District No. 21 to approximately 7/11 of such funds. However that may be, we have to deal here only with the construction of the statutes of this state, and, as we have seen, these statutes furnish no basis for the claim upon which suit was brought in this case. Nor can we say that the legislature has left the law in an unfortunate situation and has failed to make equitable provisions in case of the division of a school district. It is not altogether improbable that it may have thought that such divisions should not be made too easily. If the school districts in question in this case were compelled to raise their necessary expenses by special taxation, then, it is readily seen, a division in this case, since the old district was left with only 28% of the assessed valuation, might have been very unjust.

2. It appears that during the school year of 1932-33, District No. 14 received funds in the amount of $5524.71, and paid out the sum of $4538.63. The appellant claims, if we correctly understand the record be-

fore us and the briefs of counsel, that the amount so received should have been paid over to District No. 21, and that the expenses for that year also should have been paid by it, in accordance with the provisions of Section 99-309, Wyo. Rev. St. 1931, which reads as follows:

"Whenever the district boundary board shall have formed or established a new district from districts already legally organized, the school board of such newly organized district may draw its proportion of the public school funds for paying teachers or other necessary legal school expenses from the school treasury of the district from which it was separated until such time as the newly organized district shall receive its proper apportionment of school moneys and taxes. In like manner, any district which is established from two or more districts may draw its proportion of the proper school funds for payment of teachers or other necessary legal school expenses from the treasury of the district to which the said new school district formerly belonged."

Appellant accordingly asked in the trial court by way of counterclaim and asks here that it should have judgment against the respondent for the difference between $5524.71 and $4358.63. We need not determine as to whether or not the funds received by District No. 14 from the county and the state should have been turned over, as claimed. The sum of $1387.39 was received, if we understand the record correctly, as the result of a special levy in District No. 14, and for which District No. 21 could, of course, have no claim, either legal or equitable. Deducting this amount from $5524.71, the remaining amount received by District No. 14 during the school year above mentioned was $4137.32, an amount less than that which was paid out as expenses during that period, so that no basis remains for a counterclaim.

The judgment of the district court is accordingly re-

versed, with directions to dismiss the plaintiff's petition as well as the counterclaim of the defendant herein.

*Reversed, with Directions.*

RINER and KIMBALL, JJ., concur.

## ON PETITION FOR REHEARING

BLUME, Chief Justice.

A petition for rehearing has been filed herein. See 67 P. (2d) 192. School District No. 14 was organized as a separate school district on June 8, 1932. Desiring to obtain a separate distribution of future funds, it insisted upon entering into a contract with the old district, No. 21. This contract is set out in the original opinion. It shows upon its face that an apportionment was sought to be made under Section 99-901, R. S. 1931. We held that under the facts existing in this case no apportionment or division of property was authorized under the section above mentioned. That part of our decision is not attacked in the petition for rehearing. But we held further that the action is one upon the contract above mentioned, and that, since the contract is void, nothing can be recovered in this action. We accordingly directed the trial court to dismiss the action. Counsel for plaintiff contends that we should have remanded the case for a new trial; that the action is not one upon the contract, but is an action to recover under Section 99-309, Rev. St. 1931, which, in so far as pertinent, reads as follows:

"Whenever the district boundary board shall have formed or established a new district from districts already legally organized, the school board of such newly organized district may draw its proportion of the public school funds for paying teachers or other necessary legal school expenses from the school treasury of the district from which it was separated until such time as the newly organized district shall receive its proper apportionment of school moneys and taxes."

We think that counsel for the plaintiff is in error in contending that the action was not one on contract. The petition alleges the establishment of the new district and the existence of the old; that the districts agreed upon the proper apportionment of school moneys and taxes; that they entered into a contract on October 23, 1932, whereby the defendant agreed to pay plaintiff the sum of $1307.25, in three instalments, one instalment of $425 due April 1, 1933, and two others, one of which was made payable in each of the succeeding years; that the contract was approved by the district court; "that defendant has failed and refused and neglected to pay the aforesaid sum of $425.00 which was due and payable on or before April 1, 1933, and the same is long since due and owing to plaintiff, and defendant has expressed its intention of refusing to pay all or any part of the aforesaid sum of $1307.25, wherefore the whole thereof is now due and payable to plaintiff." Thus plaintiff relied upon recovery of the whole sum by reason of the fact that default had been made in the payment of one of the instalments mentioned in the contract. Judgment is prayed for $1307.25 and interest. Plaintiff further pleaded in paragraph 7 of the petition "that defendant has wholly failed, refused and neglected to allow plaintiff to draw from the school treasury of the defendant district the sum of $1307.25 or any part thereof, and has wholly failed, refused and neglected to allow plaintiff to draw its proper proportion of the school funds [for paying teachers or other necessary legal school expenses] from the school treasury as by law provided, to the damage of plaintiff in the sum of $1307.25." The words enclosed in the bracket as above mentioned, namely, "for paying teachers or other necessary legal school expenses," (words contained in Sec. 99-309, supra) were stricken out of the petition by counsel for School District No. 14 with the consent of the court, thus indi-

cating that the petition was not based upon the provisions of Section 99-309, supra, but upon the contract, which, as stated before, we held to be unauthorized. This theory of the petition is borne out by the evidence in the case introduced on behalf of School District No. 14. It was shown that the contract was entered into, and it was introduced in evidence. Plaintiff did not attempt to show what portion of the funds which School District No. 21 had on hand justly belonged to School District No. 14. Nor did plaintiff attempt to show the amount of expenses incurred so as to come within any of the provisions of Section 99-309, supra.

Counsel for plaintiff, however, maintains that the contract was merely used as evidence. But if that was his theory, he should not have pleaded the contract. Evidence should not, ordinarily at least, be pleaded. 49 C. J. 40. Moreover, the contract, clearly entered into, as it was, under the provisions of Section 99-901, supra, is wholly void, and cannot be used as evidence for the recovery herein under Section 99-309, supra.

We think, even after reading the vigorous assertions of counsel for plaintiff to the contrary, that the petition, fairly construed, presents an action on a contract. A petition should proceed upon a definite theory, and state the facts essential to support that theory. 49 C. J. 117, 165. And that theory must be determined from its leading averments, and the general scope and tenor of the pleading, and the theory most apparent and clearly outlined by such consideration will be adopted rather than another possible theory which may be, to some extent, indicated by a consideration of the formal part or fragmentary statements. 49 C. J. 167. In the petition in the case at bar, the contract is emphasized; the averments in that connection are the leading averments, showing the action one upon contract, without considering the parts struck out, which further emphasize that theory. A cause of action under Section 99-

309, supra, is a distinct and separate cause of action from that on a contract. It would ordinarily be, and in this particular instance probably would be, substantially an action for an accounting. But there is nothing in the petition indicating any such theory. It is possible, reading the petition again after the additional briefs filed herein by counsel for the plaintiff, that counsel intended to state a cause of action on a contract, and still rely upon Section 99-309, supra. But if that was true, the two different causes of action should have been stated and numbered separately. 49 C. J. 155-156.

However, this holding does not necessarily dispose of the point that the case should be sent back for a new trial, so as to permit the reformation and amendment of the pleadings, rather than that the case should be dismissed, compelling the plaintiff to bring a new suit upon the theory upon which it now relies. At least the better practice is that when a petition is fatally defective, and an amendment will not permit recovery in any event, the case should be dismissed, even though plaintiff may have the right to sue, in a separate action, upon another cause of action. 4 C. J. 1195, 1196; Mills v. First Nat. Bank, (Tex. Civ. App.) 208 S. W. 698; Bonzer v. Garrett, (Tex. Civ. App.) 162 S. W. 934; Rosenwald v. Transp. Co., 84 Or. 15, 164 Pac. 189; Larson v. Middleton, (Tex. Civ. App.) 19 S. W. (2d) 120; Thompson v. Taylor, 61 Utah 164, 211 Pac. 696; Police Jury v. Martin, 140 La. 848, 74 S. W. 170; Grego v. Grego, 78 Miss. 443, 28 So. 817. If, on the contrary, the cause of action is stated merely defectively, and the petition can be amended so as to state a perfect cause of action, the case may be sent back for a new trial. 4 C. J. 1195. We are in doubt in the case at bar, but, in view of the fact that a dismissal merely means that plaintiff would have to commence another action, we are inclined to give the plaintiff the benefit of the doubt. There are isolated statements in the petition

which may be construed as referring to a cause of action under Section 99-309, supra. We have already referred to paragraph 7 of the petition, which, it is true, is very unsatisfactory. But paragraph 3 of the petition, after referring to the contract above mentioned, contains the statement that the sum of $1307.25 "is the proper apportionment of school moneys and taxes due from defendant to plaintiff pursuant to the establishment of plaintiff district as aforesaid." This allegation may refer to Section 99-309, supra.

The order directing dismissal, heretofore made, will, accordingly, be vacated. In view of the fact that there is no evidence in the case, in any way sustaining any cause of action under Section 99-309, supra, the judgment of the court below will be reversed, and the cause remanded to the trial court, with permission to amend and reform the petition, if the trial court is so advised, and with the right of defendant to answer it, and for further proceedings not inconsistent with this and the former opinion. Costs in this court and in the lower court, to and including the time of the filing of the mandate from this court therein, will be taxed against the plaintiff.

The burden of proof of a cause of action under Section 99-309, supra, will be on the plaintiff, without aid from the contract already mentioned. The section of the statute just mentioned has been construed in the case of School District v. School District, 29 Wyo. 80, 210 Pac. 562, and the further trial herein must be subject to that case. No rule of justness has therein been laid down, but we doubt not that it will not be difficult for counsel in settling this case, or for the trial court, to arrive at the proper result. It is doubtful that we should be warranted in laying down any general rule at this time, without full argument on the point by counsel. We should, perhaps, mention the fact that counsel for plaintiff asserts, that the balance on hand

at the time of division was undoubtedly derived and issued from special tax levy, and that hence the fund should be divided according to the assessed valuation of the respective districts—namely, 72 per cent should go to the plaintiff. There is nothing whatever in the record to show this assertion to be true. The source of the money is not shown anywhere. If we may take the income of 1932-1933, shown by the record, as an indication of the source, we should rather think that only a comparatively small portion, if any, of the money was derived from special assessments, and if that is correct, then, as already pointed out in the original opinion, to give the new district 72 per cent of the money would, upon that basis, be wholly unjust.

> *Order of Dismissal Vacated; Judgment Reversed, and Cause Remanded for New Trial, with Directions.*

RINER and KIMBALL, JJ., concur.