PUBLIC SERVICE CO. of OKLAHOMA v. PARKINSON, County Treas.

No. 30853.    Sept. 28, 1943.

*141 P. 2d 586.*

Mastin Geschwind, of Oklahoma City, for plaintiff in error.

C. H. Rosenstein, Dixie Gilmer, Co. Atty., and Wm. M. Taylor, Asst. Co. Atty., all of Tulsa, for defendant in error.

DAVISON, J. This is an action to recover taxes paid under protest under the provisions of section 12665, O. S. 1931, 68 Okla. St. Ann. § 263.

It was instituted in the district court of Tulsa county on the 28th day of November, 1939, by the Public Service Company of Oklahoma, as plaintiff, against Joe T. Parkinson, county treasurer of Tulsa county, as defendant.

The questions involved relate to the validity of the prior annexation of territory to independent school district No. 22 of Tulsa county and the distribution of the tax burden to satisfy pre-existing indebtedness of district No. 22 by the application of levies to properties situated in the territory or districts annexed or purported to have been annexed to it.

The territory subject to consideration in this action constituted three independent school districts prior to 1927. They were independent school districts No. 22, known as the Tulsa school district; No. 28, known as the Red Fork district; and No. 12, known as the Dawson district.

Incidentally, in this jurisdiction independent districts are identified with cities and towns, the requirement prior to 1941 being a city of the first class or incorporated town in which a four-year accredited high school was situated. Section 6853, O. S. 1931, 70 Okla. St. Ann. § 181; amended, S. L. 1941, Title 70, ch. 6, § 1.

In 1927 both the Red Fork and Dawson districts were by order of the county superintendent of Tulsa county annexed to the Tulsa district. Since that time they have not operated as separate districts.

At the time of the annexations above mentioned all three of the districts had outstanding bond indebtedness constituting sinking fund obligations.

The plaintiff is the owner of property in both the Red Fork and Dawson districts.

For the years 1927 and subsequent years to and including 1937, the pre-existing sinking fund indebtedness of each of the districts was treated as an obligation of all of the districts united by annexation and the application of tax levies to satisfy the prior obligations of each previously separate district was extended to the territory formerly embraced in the other two.

In November of 1937 this court handed down its decision in the case of Missouri-Kansas-Texas Ry. Co. v. Excise Board of Bryan County, 181 Okla. 229, 73 P. 2d 173, wherein we held in substance that the annexation in whole or in part of a school district to an in-

dependent school district rendered the territory annexed subject to the application of tax levies to satisfy the pre-existing sinking fund indebtedness of the annexing independent district but that the indebtedness of the annexed territory could not become a charge against property in the annexing district.

Thereafter, for the year 1938 the property situated in the Dawson and Red Fork districts, including the property of the plaintiffs herein, was subjected to levies to satisfy the sinking fund obligations of the Tulsa district incurred prior to 1927.

This was unsatisfactory to some of the property owners and the application of levies was protested by the Texas-Empire Pipe Line Company before the Court of Tax Review, which protest if successful would have inured to the benefit of the plaintiff and other taxpayers similarly situated. The protest, however, was dismissed for want of jurisdiction, and upon review this court in Texas-Empire Pipe Line Co. et al. v. Tulsa County, Excise Board, 187 Okla. 591, 104 P. 2d 441, affirmed the order of dismissal.

In 1939 levies for the pre-existing sinking fund indebtedness of the Dawson and Red Fork districts were applied only to the property within the former territorial limits of those districts whereas the levies for the same character of indebtedness by the Tulsa district were extended to the annexed territory and thus became a charge against the property of plaintiff.

The plaintiff asserts that in 1927, when the annexation herein involved was made, the right to join one independent school district with another was regulated entirely by chapter 69 S. L. 1919; that the provisions of that law relating to annexation were not complied with in this case; that the annexation was therefore void and ineffective, or (in the alternative) if valid under the 1919 law, the distribution of tax burden was erroneous in that no part of the sinking fund burden pre-

viously assumed by the Tulsa district could rightfully be made a charge against the Dawson or Red Fork districts.

Defendant, on the other hand, says that the annexation was accomplished pursuant to a law enacted in 1913 (sec. 2, art. 6, chapter 219, S. L. 1913) under which it is asserted the tax burden was properly distributed. Defendant also takes the position that validity of the annexation proceedings cannot be attacked in this proceeding. Other related questions arise out of the positions thus taken.

The trial court decided the issues for the defendant and plaintiff appeals appearing herein as plaintiff in error, thus preserving the order of appearance in this court. Our continued reference to the parties will be by their trial court designation.

Upon consideration of the situation here presented, we have arrived at the following conclusions:

That in 1927 when the independent districts here involved were annexed to the Tulsa school district, authority for such annexation or joinder could not be attributed to the 1913 law, supra.

That the procedure contemplated by the 1919 law (which plaintiff says should have been followed) was not followed, and if a timely and proper attack had been made on the annexation proceeding, it might have been set aside.

We find, however, that subsequent to the defective annexation our State Legislature enacted in 1933 House Bill 194, chapter 93, S. L. 1933, relating to the union of one independent district to another, which legislative act by virtue of section 9 thereof validated many previous defective annexations of the character here involved, including the annexations of the Dawson and Red Fork districts.

That the validating act of the Legislature dispenses with the necessity of considering whether a defective an-

nexation can be attacked in a tax protest proceeding of the type here involved.

We further conclude that under the provisions of the validating act (chapter 93, S. L. 1933) as well as under the provisions of the 1919 law, supra, which should have been followed in connection with the annexations in 1927, it was contemplated that the prior identity of each independent district should be preserved for tax purposes to the extent necessary to retire outstanding bond and warrant indebtedness which constituted a sinking fund obligation of the district prior to annexation.

Our ultimate conclusion is therefore that the plaintiff should prevail to the extent its taxes paid under protest are shown to have resulted from the application of levies to property situated in the Dawson and Red Fork districts to satisfy sinking fund indebtedness of the Tulsa school district incurred prior to the annexation or joinder of the first mentioned districts to the Tulsa district.

The foregoing conclusions are impelled by the following reasons and considerations.

It is appropriate to observe at the outset of our discussion that our Constitution places few restrictions on the power of the Legislature to provide a school system for the state. As we observed in Musick v. State ex rel. Miles, 185 Okla. 140, 90 P. 2d 631, the Legislature is by constitutional mandate charged with the duty of establishing a public school system (art. 13, sec. 1, Okla. State Const.). The method employed by it in carrying out the requirements of this mandate is largely within its discretion.

A general survey of legislation promulgated in connection with our public school system (exclusive of course of institutions of higher learning) indicates that it is contemplated that a general supervising control of schools within each of the counties is vested in a county superintendent. This gen-

eral control, however, in most respects does not extend to independent districts. There is reason for this legislative policy. It lies in the fact that the school systems in independent districts are commonly headed by school men whose competency and ability compare favorably and sometimes excel those of the county superintendent.

Thus independent districts maintain a more distinct individuality than do school districts of other classes. We are not indicating that the county superintendents have no authority whatever in connection with independent districts nor that the Legislature could not 'extend existing authority.' We point out the individuality accorded independent districts as a legislative policy for the light it may shed in the interpretation of laws relating to and regulating the public school system of the state. This is a general concept rather than a precise test and must be so regarded. The legislative policy can be changed or modified by the Legislature. In some respects, it has been so modified.

The 1913 law with which we are here concerned (sec. 2, art. 6, chapter 219, S. L. 1913; sec. 10405, C. O. S. 1921; sec. 6860, O. S. 1931; amended, S. L. 1937, p. 173) related to the annexation to or detachment from independent districts of territory outside the limits of the town or city by order of the county superintendent on petition of a majority of the qualified electors.

Under this law this court has held that an entire common school district or a portion thereof may be annexed to an independent school district. Protest of St. Louis-San Francisco Ry. Co., 164 Okla. 229, 23 P. 2d 699; Common School District No. 49 v. Wolfe, 94 Okla. 87, 221 P. 42; Walker v. Chambers, 93 Okla. 80, 219 P. 659. However, common school districts normally constitute territory outside the limits of a city or town and thus constitute the type of territory subject to change as contemplated by the stat-

ute. Where an attempt is made, as in this case, to annex another independent district in its entirety, an entirely different question is involved, since such a district contains territory lying "inside" another city or town. In such cases, the opening provision of the statute (1913 act, supra) claims consideration. It is provided at the outset in section 2 of the act:

"Territory outside the limit of any city or town within an independent district may be added to or detached from such city or town for school purposes upon petition to the county superintendent of public instruction by a majority of the qualified electors of the territory desiring to be attached to or detached from such city or town ,* * *"

This court has never held that an independent school district can be annexed to another independent district under the provisions of the 1913 act. In our judgment a strained construction of the act would be required to so hold.

While viewed from strictly literal standpoint the language of the act might be construed to authorize the annexation of any territory outside of a city or town to that city or town for school purposes regardless of whether the territory so annexed was within another city or town, we do not believe it was so intended and decline to so hold.

It is our opinion as determined from the language of the statute viewed in the light of the then existing legislative policy, to preserve independent districts of a special class not subject to the same degree of control by county superintendents as exercised by them over other districts, that it was contemplated that the territory annexed or detached should be outside the corporate limits of any city. The view is further strengthened by the contemporaneous legislative declaration contained in section 1 of the same act (section 1, art. 6, chap. 219, S. L. 1913) which provided that:

"Each city of the first class, and each incorporated town maintaining a four years high school fully accredited with the State University, shall constitute an independent district and be governed by the provisions of this article"

This declaration, at the inception of the article under consideration, that each town or city of the state under the condition mentioned shall constitute a separate independent school district, argues strongly against the theory that such a district can be disorganized under the subsequent section by annexation to another independent district, there being no language in the section (sec. 2, supra) indicating that it could and the implication of the section being that it could not. Notice for purposes of analogy Walker v. Chambers, 93 Okla. 80, 219 P. 659; Hoffsommer v. Hayes, 92 Okla. 32, 217 P. 477.

If the annexation here involved had been properly and legally accomplished under the 1913 law, the distribution of tax burden as herein made would have been proper, since this court has held that in the absence of specific provision to the contrary the pre-existing sinking fund debt of the annexing independent district extends to the annexed territory and levies for the satisfaction of such debt may be properly applied to the taxable property in such territory. Excise Board of Lincoln County v. St. Louis-San Francisco Ry. Co., 185 Okla. 436, 93 P. 2d 1081; Protest of Missouri-Kansas-Texas Ry. Co., 181 Okla. 229, 73 P. 2d 173; Protest of St. Louis-San Francisco Ry. Co., 164 Okla. 229, 23 P. 2d 699; St. Louis-San Francisco Ry. Co. v. Comanche County, 136 Okla. 265, 277 P. 932.

However, since the annexation of the entire independent districts was not properly accomplished under that law, plaintiff is entitled to expect that we look elsewhere for guidance.

At the time (1927) of the annexation or joinder herein involved, there existed in this state a law under which such a joinder could have been made. That law was sections 1, 2, and 3 of

chapter 69, S. L. 1919 (70 O. S. 1941 §§ 831, 832, and 833). It provided for the union of adjacent independent districts when the union should be approved by a majority of the electors of each of the districts voting at a special election called for that purpose, which election should be called pursuant to a petition signed by at least one-third of the qualified electors in each of the districts. With reference to pre-existing bonded indebtedness it was contemplated that each of the districts should maintain its identity as a separate unit. Section 3 of the act (70 O. S. 1941 § 833) provided in part:

"If any independant district uniting to form a united district under the provisions of this act shall have at the time of its disorganization a legal warrant of bonded indebtedness, such indebtedness shall attach to and remain a charge against the territory comprised in said disorganized independent district as it existed at the time of its disorganization and it shall be the duty of the county excise board of the county or counties in which such territory is located to cause annually to be levied upon all the taxable property, in such disorganized district, a tax sufficient to meet the interest and provide a sinking fund for the payment of such indebtedness, which money when collected shall be held by the treasurer of the united district as a separate fund and apply only for the purposes for which it was collected; . . ."

The procedure contemplated by this law was not followed in connection with joining the Dawson and Red Fork districts to the Tulsa district. However, it claims a degree of importance in this case for two reasons. First, in connection with the validating statute which we shall subsequently discuss it establishes the existence of a law under which independent districts could be joined which under some authorities is essential to the effectiveness of a validating act. Second, it demonstrates a legislative intent to preserve the identity of the previous districts for tax purposes until the pre-existing debt of each such district should be discharged.

Thus we have before us a joinder of independent school districts accomcomplished in 1927 by petition to and order of the county superintendent under purported authority of the inapplicable 1913 law, but when there existed another law authorizing the joinder (the 1919 law, supra) which law was not invoked by those interested in affecting the junction.

Such was the situation in 1933 when our State Legislature enacted chapter 93, S. L. 1933, authorizing the disorganization of independent school districts for the purpose of attaching the territory thereof to another adjacent independent school district upon petition to and order by the county superintendent.

Insofar as we are here concerned, the most important phase of this act is section 9 thereof (70 O. S. 1941 § 849), which provides:

"All annexations of one or more independent school districts to another heretofore made in substantial compliance with the provisions of this Act are hereby legalized and declared valid, but all annexations of one or more independent districts to another made or attempted from and after January 1, 1934, must be made in strict compliance herewith. Laws 1933, ch. 93, p. 173, § 9."

The obvious legislative design in enacting this section of the statutes was to validate the joinder of independent districts where such joinder had been accomplished through petition of the electors and order of the county superintendent. While the petitions in the case at bar do not reflect that the signers thereof constituted a two-thirds majority of the electors of the Dawson and Red Fork districts, we do not think that deficiency of sufficient moment to render the curative statute inapplicable. We regard the procedure taken sufficient to bring the joinder or annexation within the curative act unless upon other considerations that act should not be applied.

Curative acts are ordinarily retrospective in their operation. Their purpose is to cure errors of the past. The parties to this proceeding, however, are not in agreement as to the magnitude of errors which may be cured by curative acts. Neither are the authorities. Some hold that a curative act may operate to condone that which the Legislature might have originally authorized, even though it had not acted by valid legislative act in the matter. Other decisions adhere to the view that there must have been a law under which the act sought to be validated could have been done at the time it was attempted and that a curative statute goes no further than to excuse defects in the manner of compliance with the then existing law.

Exemplary of the first mentioned view is that expressed by the Texas court in connection with previous unconstitutional statutes. Anderson County Road District No. 8 et al. v. Pollard, Atty. Gen., 116 Tex. 547, 296 S. W. 1062. See, also, Brown v. Truscott Independent School District (Tex. Com. App.) 34 S. W. 2d 837. The Tennessee court takes the view that the question is not whether the public official had the power to do the act under the prior statute, but whether the Legislature had the power to authorize such acts. Malone v. Peay, 159 Tenn. 321, 17 S. W. 2d 901. See, also, Abernethy v. Town of Medical Lake, 9 Wash. 112, 37 P. 306; City of Pullman v. Hungate et al., 8 Wash. 519, 36 P. 483. Under this view, the position is maintainable that the Legislature is not attempting to breathe the breath of life into an invalid prior law nor to legislate now for the past, but is merely approving a present existing condition, in this instance the recognized territorial limits of a school district. As above stated, other authorities express the view that there must have been a valid existing law under which the act could have been done in the first instance in order for a curative statute to be effective. See annotation 70 A. L. R. 1436. In other words, it has been said that curative statutes cannot "cure a want of authority to act at all".

As to an annexation or joinder of an entire independent district attempted before 1919, the distinction might be important and require a precise statement of our own view on the matter. However, subsequent to the 1919 act, supra, there was unquestionably in existence a law under which such a joinder or annexation could be made, and thus the act of 1933 is effective as a curative statute if it excused procedural requirements, that is, excused the election required by the 1919 act. It did so.

The joinder or annexation having been validated by the 1933 act, the distribution of the tax burden for pre-existing indebtedness is the remaining question to be determined.

We have already observed that under the 1919 act it was contemplated that for the purpose of satisfying pre-existing bonded indebtedness the original identity of the separate districts was preserved. A similar result was contemplated by the 1933 act, which contained the curative section herein applied. Section 8 of that act (section 8, ch. 93, S. L. 1933; 70 O. S. 1941 § 848) provides:

"If any independent school district annexed under the provisions of this act shall have at the time of its disorganization a legal warrant or bonded indebtedness, such indebtedness shall attach to and remain a charge against the territory comprised in said disorganized independent school district, as it existed at the time of its disorganization and it shall be the duty of the Board of Education of the district so enlarged, or the County Excise Board in case said Board of Education fails to do so, to cause annually to be levied upon all the taxable property, in such disorganized district, a tax sufficient to meet the interest and provide a sinking fund for the indebtedness, which money when collected shall be segregated and held by the Treasurer of the Board of Education and be applied only for the purposes for which it was collected. The assets and property of any

such disorganized district shall, after the payment of any indebtedness as above described belong to the district so enlarged.

"Any warrant or bonded indebtedness incurred subsequent to the annexation of one or more independent school districts to another shall attach to and become a charge against all the property in the district.

"Any bonds or warrant indebtedness of the annexing district at the time of the annexing to it of another independent school district shall likewise remain a charge against the territory comprised in said district prior to said annexation, and its assets and property after the payment by it of such indebtedness as above set forth shall likewise belong to the entire district so enlarged, provided further that said district shall have power to become indebted, to issue bonds, and provide for an excess levy as now or hereafter provided for other independent school districts except that any proclamation calling any election for any purpose shall be issued by the president of the Board of Education. Laws 1933, ch. 93, p. 172, section 8."

This statute needs no interpretation. Clearly, under it, the Tulsa district cannot insist upon the Red Fork and Dawson districts assuming a portion of the bonded debt which it had incurred prior to the time of the joinder.

It is asserted, however, by the defendant, that the result attempted to be accomplished by section 8, supra, (70 O. S. 1941 § 848, supra) is impossible of accomplishment because of constitutional inhibitions. Reliance is placed upon the decision of this court in Lowden v. Excise Board of Texas County, 185 Okla. 143, 90 P. 2d 923. In so holding it was said that the Legislature itself could not exercise the power attempted to be conferred upon the county superintendent. It was thought that exemption of the annexed territory from pre-existing tax burdens of the annexing independent district would exempt it "from the burdens out of which its advantages are to grow" and would offend " the uni-

form taxation clause of the Constitution."

In that case we were considering the annexation of extramural territory, a common school district, to an independent district. It was contemplated in connection with that annexation that by virtue thereof additional school facilities and opportunities of high school training would be extended to the annexed territory by the annexing district.

In this case we are considering the joinder, by a proceeding called annexation, of independent districts; districts of equal rank in the eyes of the law; districts which by virtue of their status as independent districts presumably had available facilities for the maintenance of high schools as well as common schools.

The equal dignity of the districts involved implies that each joining district conferred by its joinder benefits upon the other district sufficient to compensate for advantages which might accrue to it.

The doctrine announced in the cited case is inapplicable to the case at bar and the case is not of controlling importance here.

The action of the Legislature in preserving each joining independent district as a separate taxing unit for the purpose of paying its pre-existing bonded and warrant indebtedness does not transcend constitutional limitations.

In St. Louis-San Francisco Ry. Co. v. Comanche Co., supra, we said:

". . . The authorities seem to be unanimous in holding that it is for the Legislature to determine in regard to such bonded indebtedness."

In Cheek v. Eye, 96 Okla. 44, 219 P. 883, we approved the application of a law which preserved the identity of school districts (united by consolidation) for the purpose of satisfying pre-existing indebtedness. We therein said:

". . . Under the law each disorganized district retained its corporate

existence as a separate entity, for the purpose of paying its prior indebtedness. . ." .

The above case was followed with approval in Ikard v. Union Graded School District No. 64 of Caddo Co., 101 Okla. 80, 223 P. 141; notice, also, Mitsler v. Eye, 107 Okla. 289, 231 P. 1045; St. Louis-San Francisco Ry. Co. v. Bonaparte, 142 Okla. 177, 286 P. 343; and State ex rel. Riley v. City of Lawton, 101 Okla. 176, 224 P. 347.

In an annotation appearing in 47 A.L.R. 128, it is said at page 132:

"As a general rule, it is within the power of the Legislature, in changing the boundaries of municipal corporations, or in annexing one to another, to provide how the property of the former corporations, and the burden of paying their debts, shall be distributed among them. . . ."

See, also, annotation in 103 A.L.R. at page 154 and 37 Am. Jur. 658.

It follows, then, that the legislative provision as to the pre-existing debt burden as contained in the 1933 act should be followed in this case.

A levy to satisfy the pre-existing sinking fund bond and warrant indebtedness of the Tulsa district should not have been applied to plaintiff's property.

Our views on the questions discussed, supra, render it unnecessary to consider other theories of this case, as, for instance, the theory that the organization of a school district or the validity of annexation of territory thereto cannot be attacked in this case.

The cause is reversed, with directions to grant a new trial.

CORN, C. J., GIBSON, V. C. J., and RILEY, OSBORN, BAYLESS, WELCH, HURST, and ARNOLD, JJ., concur.