In the Matter of the Appeal of Virgil SANDERS, an Elector and Taxpayer of Byron High School, State of Wyoming, from a Decision of the District Boundary Board of Big Horn County, Wyoming, Dated February 17, 1958.

Virgil SANDERS, Appellant (Plaintiff and Appellant below),

v.

Frank H. BROWN, Dan B. Cropsey, Bliss Bayne, Patra Keele and May D. Shoemaker, as members of The District Boundary Board of Big Horn County, Wyoming, Appellees (Defendants and Appellees below).

No. 2885.

Supreme Court of Wyoming.

June 23, 1959.

341 Pac.2d 85

266

J. D. Fitzstephens, Cody (Goppert & Fitzstephens, Cody, on the brief), for appellant.

John O. Callahan, Basin, for appellees.

Robert A. Meyer, Casper, amicus curiae for Ohio Oil Co.

Before BLUME, C. J., and PARKER and HARNS-BERGER, JJ.

268

## OPINION.

Mr. Chief Justice BLUME delivered the opinion of the court.

On February 17, 1958, the school District Boundary Board of Big Horn County, Wyoming, consisting of the Board of County Commissioners, the County Treasurer and the County Superintendent, by a vote of three to two undertook to consolidate the Lovell, Cowley and Byron school districts and the Byron High School District, establishing a new district numbered 58. Virgil Sanders, plaintiff and appellant herein, a resident and taxpayer of Byron High School District, appealed from the order of the boundary board, alleging that the action was illegal and without jurisdiction. The district court held the action of the board to be legal and with jurisdiction.

The only question argued and submitted to this court is as to whether or not the district boundary board had jurisdiction to consolidate the Byron High School District with the other districts. We agree with the contention of the plaintiff and appellant Sanders for the reasons hereafter stated.

The boundary board claims to have jurisdiction inso far as the Byron High School District is concerned under § 67-701, W.C.S. 1945, as amended by § 15, Ch. 119, S.L. of Wyoming, 1955, which, insofar as material herein, reads as follows:

> "The County Superintendent of Schools, the County Treasurer, and the Board of County Commissioners shall constitute a board for laying off their county into convenient school districts, such board to be styled 'the district boundary board.' Said board by a majority vote may divide the county into school districts, may alter and change the boundaries of the districts *so formed* from time to time and may at any time consolidate entire districts, or portions of districts, when, in the opinion of such board such changes, alterations or consolidations may be justified by existing circumstances and conditions * * *." (Emphasis supplied.)

It may be noted that under this provision the board forms the school districts in a county and may change the boundaries of the districts, including consolidation thereof, *when so formed*. In other words, the power of the board here mentioned is limited and applies only to the districts which are formed by it. So we must inquire as to whether or not the board may establish and form a high school district in a county. In that connection we should bear in mind the rule stated in 78 C.J.S. Schools and School Districts § 99, pp. 846, 847, as follows:

"A county board of education or of school trustees, or a like body, may exercise any powers authorized by law. It has, in general, only such powers as are expressly or directly conferred on it by constitutional or statutory provision or powers which are necessarily incidental to those expressly conferred, or only those powers which are expressly or impliedly given by statute, and it can exercise its powers only in the manner authorized by statute. The powers of such a board are not to be extended by construction, and, where the right of the board to exercise authority is doubtful, such authority should not be exercised by it."

See also School Dist. No. 14 in Fremont County v. School Dist. No. 21 in Fremont County, 51 Wyo. 370, 67 P.2d 192, 195, 71 P.2d 137. No express power is given by § 67-701 to form a high school district and we do not think that the power to do so is implied in view of the fact that we have an express statutory provision in connection with the formation of high school districts.

Provisions for the organization of high school districts are contained in §§ 67-901 through 67-936, W.C. S.1945 (1957 Cum.Pocket Supp.) and §§ 67-1101 through 67-1104, W.C.S.1945, containing some 40 sections in all. Section 67-901 provides as follows:

"For the purpose of affording better educational facilities for pupils more advanced than the studies provided in the district schools existing in the several counties in this State, and in addition to such school districts as are now organized, or which may hereafter be formed under the laws for the creation and formation of the same, there may be organized and established a high school district and a free high school therein, on conditions and in the manner hereinafter prescribed, the territorial extent of which may embrace any

number of present organized and constituted school districts, the qualified electors of which may vote to become a part of such high school district and participate in the maintenance and benefits of such high school organization."

It may be noted that these high school districts are established in addition to other school districts and these other school districts are probably those to which reference is made in § 67-701. The Act relating to high school districts provides for the organization by petition and vote by ballot. Its name is ———— High School District instead of ———— School District as is true in connection with other districts. Full provision is made for the conduct of the election. The number of trustees is six instead of three as in other school districts. The statutes provide for the location of the high school, for tax levies, for the issuance of bonds and payment thereof, for the collection of taxes, for the erection of suitable high school buildings, for the employment of a faculty, for annexation of territory to the high school district already created, and for the withdrawal of territory therefrom. In other words, the statutes relating to high school districts are complete in themselves and provide for all proper and necessary matters in connection therewith. Hence, we must adopt herein the ordinary rules of construction of statutes. In the case of State ex rel. Mellinger v. Throckmorton, 169 Kan. 481, 219 P.2d 413, 417, the court stated:

"It is clear that the legislature intended by the mentioned acts to provide separate methods for the formation and alteration of school districts lying wholly within a county and joint school districts lying in two or more counties. It is a cardinal rule of law that statutes complete in themselves, relating to a specific thing, take precedence

over general statutes or over other statutes which deal only incidentally with the same question, or which might be construed to relate to it. Where there is a conflict between a statute dealing generally with a subject, and another dealing specifically with a certain phase of it, the specific legislation controls in a proper case. This rule is applicable here. * * *"

In 50 Am.Jur. Statutes, § 367, p. 371, it is stated:

"It is an old and familiar principle, closely related to the rule that where an act contains special provisions they must be read as exceptions to a general provision in a separate earlier or subsequent act, that where there is in the same statute a specific provision, and also a general one which in its most comprehensive sense would include matters embraced in the former, the particular provision must control, and the general provision must be taken to affect only such cases within its general language as are not within the provisions of the particular provision. * * *"

In the case of Public Service Co. of Oklahoma v. Parkinson, 193 Okl. 112, 141 P.2d 586, 590, certiorari denied 320 U.S. 776, 64 S.Ct. 90, 88 L.Ed. 465, it is held that when a statute provides for a separate independent school district, that fact argues strongly against the theory that such a district can be disorganized under the subsequent section by annexation to another independent district.

We think these rules are controlling herein. It may be noted that the creation of a high school district and annexation thereto or separation of territory therefrom are all made by the vote of the people interested, and we hardly think that the legislature intended that the voice of the people expressed in an election should be nullified by the actions of a few individuals consti-

tuting the boundary board. If the contention of the boundary board were correct, it is very clear that the people might vote to create a high school district in one day and the boundary board could consolidate it or divide it, changing the boundaries, the very next day. That is so unusual a situation that we cannot believe that such was the intention of the legislature. In 1947 the legislature by Ch. 163 of the Session Laws of that year provided for the reorganization of school districts. It may be noted that by § 10 of that Act it is provided that whatever reorganization is made must be approved by the vote of the people. We need not determine the applicability of that legislation in the case at bar, but the fact that the legislation provided for approval by the electors would emphasize the fact that the legislature has generally preferred to have the electors determine their own destiny in school matters rather than to have the members of the boundary board do so for them.

Counsel for the appellees cites us to § 67-915 which states, among other things, that a high school district "shall be recognized as one of the regular constituted school districts of the county, and shall be entitled to and shall receive all the rights and benefits as such." Counsel contends that this provision shows that the boundary board has jurisdiction in this matter under § 67-701. A high school district is of course a school district, but that does not mean that it is subject to the same provisions as other districts. Section 67-915 apparently was enacted for the specific purpose that a high school district should receive all the rights and benefits of other school districts as, for instance, a portion of the funds distributed by the state to the various school districts. Counsel for appellees also cites us to Ericksen v. School District No. 2 of Na-

trona County, 67 Wyo. 216, 217 P.2d 887. That case refers to the limitation of bonded indebtedness of a high school district and has no bearing in the case at bar.

We might mention the fact that the identical question now before the court came before the Honorable Louis J. O'Marr, Attorney General, on July 13, 1944. In that case he was requested to answer the question "Does the County Boundary Board have the authority to change the boundary of an organized High School District?" His answer was as follows:

"My answer to the first question must be in the negative, for High School Districts are organized by petition by freeholders of districts to be included in the high school district followed by an election. Annexation of school districts to high school districts and the withdrawal of school districts from high school districts are also provided for but, as in the original formation, annexations and withdrawals must be by petition and a vote of the electors. (Article 5 of Chapter 99, Wyoming Revised Statutes, 1931, as amended). It will be seen from the above that high school districts are governed by special laws and, therefore, district boundary boards have no jurisdiction over the boundaries of such districts." Opinions of the Attorney General of the State of Wyoming, 1941-1947, p. 516.

The legislature did not change the law in any respect material here after the foregoing opinion was rendered, so that it apparently acquiesced in the opinion, which deserves some consideration on the part of this court in considering the intention of that body. We think that Attorney General O'Marr was correct.

The judgment of the district court is reversed.

Reversed.