2002 OK 29

**PUBLIC SERVICE COMPANY OF OKLAHOMA, an Oklahoma Corporation, Plaintiff/Appellee,**

v.

**NORTHEASTERN OKLAHOMA ELECTRIC COOPERATIVE, INC., an Oklahoma Corporation, Defendant/Appellant.**

No. 95,869.

Supreme Court of Oklahoma.

April 24, 2002.

Leonard M. Logan, IV, Todd E. Kolczun, Logan & Lowry, LLP, Vinita, OK, for the appellant.

Jay M. Galt, Marjorie McCullough, White Coffey, Galt & Fite, Oklahoma City, OK, Stratton Taylor, Mark Ramsey, Taylor, Burrage, Foster, Mallett, Downs & Ramsey, Claremore, OK, for the appellee.

Diane Pedicord, Sue Ann Nicely, Oklahoma Municipal League, Oklahoma City, OK, for the amicus curiae, Oklahoma Municipal League, Inc.

HODGES, J.

## I.  ISSUE

¶ 1 The issue before this Court is whether title 11, section 21–112 of the Oklahoma Statutes cures defects in the publication procedures after an ordinance has been duly passed by a town.  We hold the section 21–112's conclusive evidence provision cures the Town of Chelsea's failure to comply with title 11, section 14–106's publication requirements.

## II.  FACTS

¶ 2 The facts are undisputed.  Northeastern Oklahoma Electric Cooperative, Inc. (NOEC) is a rural electric cooperative which is authorized to operate in rural areas.  Okla. Stat. tit. 18, § 437.2(d) (2001).  Public Service Company of Oklahoma (PSO) owns a franchise for the purpose of providing electrical service with the Town of Chelsea, Oklahoma.

¶ 3 The sole owner of property in an area known as the Chelsea Industrial Park (Park) petitioned the Town of Chelsea to annex the area.  *See id.* at 21–105.  Notice of the presentation of the petition to the Town of Chelsea's board of trustees was given for two consecutive weeks pursuant to title 11, section 21–105.  In 1997, the board of trustees adopted an ordinance annexing the area.  The ordinance was not published as a legal notice after its adoption although the local newspaper reported on the trustee's meeting, including the ordinance.  On August 20, 1997, the ordinance was recorded in the Rogers County Clerk's office pursuant to title 11, section 21–112.

¶ 4 In 2000, NOEC began furnishing electric service within the Park.  PSO filed a suit for injunctive relief, asserting by virtue of the ordinance's passage, its filing with the county clerk, and its franchise, that it has the exclusive right to provide electric service within the Park.  NOEC contended that the ordinance was not published and never took effect, the Chelsea Industrial Park is not a part of the Town of Chelsea, and therefore,

NOEC, not PSO, has the right to provide electric service to the area.

¶5 Initially, the district court agreed with NOEC. However, after PSO filed a motion to reconsider, the district court enjoined NOEC from providing electric service within the Park. NOEC appealed. This Court retained the appeal for disposition.

## III. STANDING

¶6 PSO asserts that NOEC does not have standing to contest the effectiveness of the annexation ordinance. Generally, the corporate limits of a municipality cannot be collaterally attacked except by the state acting through its attorney general. *Biggerstaff v. City of Altus*, 1926 OK 115, ¶17, 243 P. 751; *see Macy v. Oklahoma City Sch. Dist. No. 89*, 1998 OK 58, ¶15, 961 P.2d 804, 807. A challenging party has standing to challenge an annexation ordinance if it has a personal stake in the outcome and a personal or economic injury. *Oklahoma Gas and Elec. Co. v. Oklahoma Elec. Coop., Inc.*, 1973 OK 158, ¶12, 517 P.2d 1127, 1132. Because NOEC has a personal stake in the outcome and a potential economic loss, it has standing to challenge the annexation ordinance.

## IV. EFFECTIVE DATE OF ORDINANCE

¶7 Both parties agree that NOEC's right to provide electric service to the Park hinges on whether the ordinance passed by the board of trustees became effective before NOEC began service within the Park.[1] NOEC has the authority to provide electric service to rural areas and to areas it served before annexation by a municipality. Okla. Stat. tit. 18, 437.2 (2001); *Oklahoma Gas and Elec. Co.*, 1973 OK 158, 517 P.2d at 1127. Thus, NOEC has the right to provide electric service to customers within the Park if it was doing so before the annexation's effective date. Otherwise, PSO has the exclusive right to provide electric service to customers within the Park.

¶8 Title 11, section 14–103 provides for an emergency measure to go into effect upon its final passage unless the measure specifies a later date. Section 14–106 requires that a measure be published within fifteen days after its passage. Had the Town of Chelsea followed section 14–106, it is unquestioned that the annexation ordinance would have become effective when it was published. *East Central Okla. Elec. Co-op., Inc. v. Oklahoma Gas & Elec. Co.*, 1973 OK 3, 505 P.2d 1324.

¶9 Pursuant to title 11, section 21–112, the mayor of a town must file an annexation ordinance in the county clerk's office, and the record in the county clerk's office is conclusive evidence of the annexation. The purpose of recording is to give notice to interested parties that an area has been annexed, the same purpose as publication. *Burgess v. Independent Sch. Dist. No. 1*, 1959 OK 37, ¶23, 336 P.2d 1077. The intended effect of section 21–112 is to immunize annexation ordinances from attacks based on procedural defects by making the recording in the county clerk's office conclusive evidence of the regularity of the proceedings. Okla. Stat. tit. 11, § 21–112 (2001); *Welborn v. Whitney*, 126 P.2d 263, 1942 OK 142.

¶10 Because section 21–112 was intended to remedy procedural defects in the annexation process, it is a curative statute. A curative statute is "one which, while marking out a course for the officers to pursue, at the same time declares that certain irregularities shall not vitiate any proceedings that shall be had under the statute." *Welborn v. Whitney*, 126 P.2d at 267; 2 Norman J. Singer, Statutes and Statutory Construction § 41:11 (6th ed.2001). The Legislature may make immaterial any procedural requirement which it could have omitted from the original legislation. *Welborn*, 126 P.2d at 267; Singer, Statutes at § 41:11. The power to enact curative statutes does not extend to remedying a lack of authority to act at all. *Welborn*, 126 P.2d at 267.

---

1. We note that the ordinance states that it "shall requires become effective immediately upon its passage and publication." This is a reiteration of title 11, section 14–106. Because the parties did not raise the language in the ordinance as an issue, we do not address it here.

¶ 11 Curative statutes have long been recognized by this Court as effectively curing non-jurisdictional procedural defects. *Public Serv. Co. of Okla. v. Parkinson*, 1943 OK 299, 193 Okla. 112, 141 P.2d 586; *Welborn*, 126 P.2d at 263. In *Parkinson*, a school annexation was attacked for failure to follow the statutory procedures for annexation. After the defective annexation, the Legislature passed a curative statute. This Court upheld the annexation based on the subsequently enacted curative statute. In *Welborn*, this Court recognized the effect of curative statutes when applied to the procedures leading up to the execution of a tax deed. Curative statutes applied to the defective exercise of already existing power are valid. *Welborn*, 126 P.2d at 266–67. However, a legislative body cannot validate the "the exercise of assumed power not existing at the time of its purported exercise." *Id.*

¶ 12 In the present case, the Board of Trustees had authority to annex the Park. It followed the statutory procedures necessary for the annexation. It is unchallenged that the Park was properly annexed. Only the publication after adoption of the ordinance was omitted. The Legislature did not have to require the publication of the ordinance after it was adopted by the Board of Trustees.

¶ 13 The Legislature had the authority to cure defects caused from the failure to publish the ordinance after its adoption through section 21–112. Because the defect in the publication was cured by section 21–112, the ordinance became effective when it was filed in office of the county clerk and before NOEC initiated service within the Chelsea Industrial Park. Thus, the trial court was correct in issuing an injunction against NOEC.

¶ 14 This conclusion is consistent with rules of statutory construction utilized to determine legislative intent. "Where two or more enactments are involved, the primary objective is to determine the latest expression of the legislative will." *Grand River Dam Auth. v. State*, 1982 OK 60, ¶ 24, 645 P.2d 1011, 1018. Under this rule, the last enactment will ordinarily prevail when there is an irreconcilable conflict between two statutes. *Trask v. Johnson*, 1969 OK 57, ¶ 6, 452 P.2d 575, 577. Section 14–106, requiring publication, was enacted in 1949 and first codified as section 579.2 of title 11. Because the conclusive evidence language of section 21–112 became effective in 1978, after section 14–106, section 21–112 controls.

¶ 15 In the same manner, the amendment to section 21–112 to include the conclusive evidence language was intentional and, in this case, significant. We will not deem the Legislature to have done a vain or useless act. *Johnson v. City of Woodward*, 2001 OK 85, ¶ 14, 38 P.3d 218, 224–25. To hold that section 21–112 did not cure the publication defect would be to leave the conclusive evidence language without meaning and useless.

¶ 16 PSO relies on *East Central Okla. Elec. Co-op., Inc. v. Oklahoma Gas & Elec. Co.*, 1973 OK 3, 505 P.2d 1324. This case is not controlling because the conclusive evidence language did not become effective until 1978, after *East Central* was adopted. Thus, the conclusive evidence language was not at issue in *East Central*.

## V. CONCLUSION

¶ 17 Pursuant to title 11, section 21–112, recording the annexation ordinance in the Rogers' County Clerk's office cured the failure to follow section 14–106's publication requirements. The annexation was effective upon its recording in the Rogers' County Clerk's office. NOEC was not providing electric service to the Chelsea Industrial Park prior to the Park's annexation to the Town of Chelsea, and PSO had an exclusive franchise to provide electric service to the Chelsea Industrial Park. Therefore, the Rogers County District Court properly enjoined NOEC.

AFFIRMED.

¶ 18 HARGRAVE, C.J., WATT, V.C.J., HODGES, LAVENDER, OPALA, WINCHESTER, JJ., Concur.

¶ 19 KAUGER, SUMMERS, BOUDREAU, JJ., Dissent.

**84**

SUMMERS, J., dissenting and joined by KAUGER, J. and BOUDREAU, J.

¶ 1 The "annexing ordinance" never became effective because it was never published as required by statute. The statute upon which the Court relies to "cure" the defective publication is 11 O.S.1991 § 21–112, which reads:

When any territory is *annexed to* or detached from a municipality, whether by *ordinance* or court order, the mayor shall file and record a duly certified copy of the *ordinance* or court order, together with an accurate map or plat of the territory, in the office of the county clerk of the county in which the territory, or the greater portion of it, is located. The record in the office of the county clerk shall be conclusive evidence of such annexation or detachment. (Emphasis added).

¶ 2 The problem is that at the time this attempted annexation was filed in the Clerk's office there was no annexing ordinance in effect. The Oklahoma Municipal Code at 11 O.S.1991 § 14–106 states in pertinent part:

*No ordinance* having any subject other than the appropriation of monies *shall be in force unless published* or posted within fifteen (15) days after its passage. (Emphasis added).

¶ 3 The courts regularly construe the word "shall" as imposing a mandatory requirement. *Oklahoma Electric Cooperative, Inc. v. Oklahoma Gas and Electric Co.,* 1999 OK 35, ¶ 9, 982 P.2d 512, 514; *Stonecipher v. District Court of Pittsburg County,* 1998 OK 122, ¶ 14, 970 P.2d 182, 186.

¶ 4 The "annexing ordinance" itself conditions its effectiveness on its publication:

Section 3. *From and after the effective date* of this Ordinance, said property so annexed shall be and become an integral part of the Town of Chelsea, Oklahoma, and shall be subject to the Ordinances thereof.

Section 4. Emergency Clause: It being necessary for the preservation of the peace, health, safety and public welfare of the citizens of the Town of Chelsea, Oklahoma, an emergency is hereby declared to exist by reason whereof this *ordinance*

*shall become effective immediately upon its passage and publication.*

*(See Transcript of Proceedings (10–19–01) Pl.Ex. 1)* (emphasis added).

Thus it should be clear that when some person took the City Councils' work to the courthouse for filing there was no annexing ordinance in effect for the "curative statute" to cure.

¶ 5 The point was made by this court in *East Central Oklahoma Electric Co-op., Inc. v. O.G. & E. Co.,* 1973 OK 3, 505 P.2d 1324, 1329:

An ordinance adopted in compliance with the statute [11 O.S.1971 § 579.2, now codified as 11 O.S.1991 § 14–106] with the emergency clause attached is not effective and in force until it has been published.

This statement exactly supports the law as set out in § 14–106 of the Oklahoma Municipal Code, and, in my opinion, is in no way changed by the later addition of the "conclusive evidence" language of § 21–112. This is so because § 21–112 only applies to "ordinances." Here there was no ordinance in effect-only an ineffective attempt to annex.

¶ 6 Clearly the newspaper account of the council meeting, carrying no legal description of the land sought to be annexed, cannot qualify as the publication in full required by § 14–106, nor as the publication by title only required (when the emergency clause is attached) by § 14–107(c). With no statutorily-required publication the attempted annexation never took effect as an ordinance so as to invoke the provisions § 21–112.

¶ 7 Today's opinion effectively repeals the legislatively—required publication of an ordinance, and allows that publication to be replaced by filing the thing of record in the Clerk's office. I do not believe the Legislature wrote it to work that way. Therefore I respectfully dissent.