Question Submitted by: The Honorable Jason Nelson, State Representative, District 87
2016 OK AG 4
Decided: 05/19/2016
Oklahoma Attorney General Opinions

Cite as: 2016 OK AG 4, __ __

 

¶0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
1. How does the law establishing residency for public school districts define residency for children admitted to day treatment programs?
2. If a facility with a day treatment program is located within the boundaries of the public school district such that students admitted to the program have residency within the public school district, must the public school district provide on-site educational services to those students?
3. Are the limitations or provisions identified in the law establishing residency applicable to day treatment programs?
4. May a facility with a day treatment program contract with a public school district other than the one in which it sits or with another educational service provider for on-site educational services?
5. Which on-site educational services must be provided to children at a day treatment program?
6. Must the provision of on-site educational services include occupational, physical, and speech therapy; academic instruction; meals; or transportation?
7. Is a public school district prohibited from classifying and administering its on-site educational services to children at a day treatment program as an alternative school or an alternative education program?
8. Who is responsible for the supervision of the educational plan, the school district teachers, the academic content of educational services, the classroom, and the student discipline necessary for the provision of on-site educational services at a day treatment program?
9. Does the provision of on-site educational services at a day treatment program impact any licensing or accreditation standards? 
I.
Background
¶1 Your questions relate to the provision of educational services to children attending day treatment programs. A day treatment program is defined as a "nonresidential, partial hospitalization program[], day treatment program[], and day hospital program[] in which children and adolescents are placed for psychiatric or psychological treatment." 10 O.S.2011, § 175.20. Day treatment programs are designed to treat children and adolescents with mental health needs that impair their ability to function age-appropriately and who are at risk of needing inpatient, residential, or institutional care. Id. Children attend day treatment programs because such programs are the "less restrictive alternative to inpatient treatment." 43A O.S.2011, § 5-502(7).
¶2 By law, the State Board of Health, the Board of Mental Health and Substance Abuse Services, and the Oklahoma Health Care Authority Board must promulgate rules establishing standards for day treatment programs as defined above and must coordinate development and oversight of such rules. 10 O.S.2011, § 603.4. Pursuant to this requirement, the State Department of Health[1] has established hospital and construction standards for day treatment programs, OAC 310:667-57, and the Oklahoma Health Care Authority Board has established administrative rules governing the requirements for providers seeking accreditation and certification status, OAC 317:30-5. These standards emphasize the need for access to educational services. OAC 310:667-57-3; OAC 317:30-5-241.1(f)(1). 
¶3 Further, the Department of Mental Health and Substance Abuse Services
[2] has promulgated rules applicable specifically to children admitted to day treatment programs. Those rules require that the hours of operation "make it possible for consumers to receive a minimum of three (3) hours of treatment and service each day in the program, excluding time spent in fulfillment of academic educational activities as required by law." OAC 450:17-5-34(a)(1) (emphasis added). And the services provided at day treatment programs must, at a minimum, include the provision or arrangement of academic education as required by state or federal law. OAC 450:17-5-34(a)(2)(H).
¶4 While these Boards govern the hospital, provider, and mental health service aspects of day treatment programs, the State Board of Education (or "Board") is responsible for establishing the standards respecting educational services provided on-site. 70 O.S.Supp.2015, § 3-104.7(B) ("[T]he State Board of Education shall establish standards for on-site educational services provided in . . . day treatment programs."). "The standards shall address all areas of education including teacher certification requirements, number of hours taught, adequacy of facilities, and educational plans including plans for transition into regular school setting." Id. And, importantly, no facility providing a day treatment program "shall be licensed pursuant to the provisions of [the School Code of 1971] unless the facility meets the standards for educational services established by the State Board of Education." Id. § 3-104.7(C). Lastly, the Board is compelled to promulgate rules implementing these requirements. Id. § 3-104.7(D). Reading these requirements together, a day treatment program serving children must, as part of its program, provide or arrange for educational services that meet the standards of the Board. And, indeed, "[i]n order for the facility to meet the standards . . ., a contract must be in effect with an accredited school." OAC 210:35-31-2(a).
¶5 That all the Boards addressed above coordinate their efforts in serving children in need of a less restrictive alternative to inpatient treatment is consonant with the two goals identified in the statute establishing day treatment programs: (1) "preventing the need for or reducing the length of inpatient or institutional care" and, most relevant to this opinion, (2) "reintegrating [] the child into the school and the community." 10 O.S.2011, § 175.20(A) (emphasis added). Indeed, reintegration of the child into the regular school day is a major focus for treatment teams providing services to children admitted to these programs. For example, the standards set for educational services provided in day treatment programs state that "[i]nstruction in an appropriate educational program shall be based on individual needs and should address reintegration into a full school day." OAC 210:35-31-5 (emphasis added). And, again, the education plan for children in day treatment programs "must have detailed plans to fully integrate the child in the home and community, and it must demonstrate collaboration with the educational system to reintegrate the child into the home school." OAC 210:35-31-7 (emphasis added). With reintegration of the child into the community through coordinated efforts in mind, your questions, at base, ask: who is responsible for providing on-site educational services to children at day treatment programs, what educational services must be provided and in what manner may they be delivered, who pays for the provision of on-site educational services, and who oversees the provision of these services?
II.
Principles of Statutory Interpretation
¶6 Statutory interpretation begins with the text of the statute--and absent unresolvable ambiguity--ends with the text. See Stemmons, Inc. v. Universal C.I.T. Credit Corp., 1956 OK 221, ¶ 19, 301 P.2d 212, 216. Additionally, the Legislature may delegate power to the agency to implement statutorily-mandated policies. Tulsa Cty. Deputy Sheriff's Fraternal Order of Police, Lodge No. 188 v. Bd. of Cty. Comm'rs of Tulsa Cty., 2000 OK 2, ¶ 9, 995 P.2d 1124, 1128. And "[t]he same rules of construction apply to administrative rules and regulations as to statutes." McClure v. ConocoPhillips Co., 2006 OK 42, ¶ 25, 142 P.3D 390, 398. In this Opinion, we consider both statutes and their implementing regulations.
III.
Discussion
A.
The school district in which a facility with a day treatment
program is located is ultimately responsible for the provision
of educational services.
¶7 The Oklahoma Constitution compels the Legislature to "establish and maintain a system of free public schools wherein all the children of the state may be educated." Okla. Const. art. XIII, § 1. While the Constitution compels the Legislature to establish and maintain such system, "[t]he method employed by it in carrying out the requirements of this mandate is largely within its discretion." Pub. Serv. Co. of Okla. v. Parkinson, 1943 OK 299, ¶ 25, 141 P.2d 586, 589. Employing its discretion, the Legislature has determined that "[a]ll children between the ages of five (5) years on or before September 1, and twenty-one (21) years on or before September 1, shall be entitled to attend school free of charge in the district in which they reside." 70 O.S.2011, § 1-114(A). 
1.
The statute establishing residency for school
district purposes plainly provides that admission
to a facility with a day treatment program
establishes residency for that child.
¶8 The Legislature has defined residency for school purposes at Section 1-113 of Title 70. That statute provides, in relevant part:

A. When used in this section, the residence of any child for school purposes shall be:
1. The legal residence of the parents, guardian, or person having legal custody. . . . 2. The foster family home, as defined in Section 1-1-105 of Title 10A of the Oklahoma Statutes, except a therapeutic foster family home or a specialized foster home . . . .
3. Any orphanage or eleemosynary child care facility having full-time care and custody;
4. Any eleemosynary child care facility in which a child is placed by a parent or guardian for full-time residential care . . . .
5. Any state-operated institution in which a child has been placed by a parent or guardian or by a state agency having legal custody of the child pursuant to the provisions of Title 10A or Section 3-101 of Title 43A of the Oklahoma Statutes for care and treatment due to a physical or mental condition of the child;
6. Any facility in which a child has been admitted and is receiving on-site educational services as provided for in Section 3-104.7 of this title;
7. The district in which a child who is entirely self-supporting resides and attends school; or
8. A state-licensed or -operated emergency shelter.

70 O.S.Supp.2015, § 1-113(A) (emphasis added). 
¶9 Of the eight ways of establishing residency set out above, residency is established through a facility in which a child has been admitted and is receiving on-site educational services as provided for in Section 3-104.7 of Title 70. Id. § 1-113(A)(6). Section 3-104.7 concerns "nonresidential settings in which school-age children are placed for psychiatric or psychological treatment which precludes their attendance at a regular public school," including "partial hospitalization programs, day treatment programs and day hospital programs." 70 O.S.Supp. 2015, § 3-104.7(A). Establishing residency in this way thus requires three things: (1) that the child is admitted (2) to a day treatment program (3) in which he or she receives on-site educational services.
¶10 First, in order to admit a child to a day treatment program, the rules promulgated by the Oklahoma Health Care Authority require outpatient health services--of which, day treatment programs are a part--to develop treatment plans "following established medical necessity criteria." OAC 317:30-5-241. If a child is attending a day treatment program, he or she must meet medical necessity criteria and must, therefore, have been admitted. Second, admission of the child must be to a day treatment program--a non-residential program where the child only spends a portion of the day. See § 3-104.7(A). Third, a day treatment program will only qualify as such if it provides or has arranged for the provision of educational services on-site, i.e. at the facility. Id. § 3-104.7(B) (requiring the Board to "establish standards for on-site educational services provided") (emphasis added); id. § 3-104.7(C) (providing that no day treatment program "shall be licensed . . . unless the facility meets the standards for educational services established by the State Board of Education"). 
¶11 Accordingly, for these particular children, the Legislature plainly and unambiguously determined that the facility with a day treatment program in which a child has been admitted and is receiving on-site educational services establishes the residency for the child.

2.
Residency determines the district in which a
child receives a free public education.
¶12 Residency determines where a child receives a free public education. See 70 O.S.2011, § 1-114(A). Further, a school district is the "area or territory comprising a legal entity, whose primary purpose is that of providing free school education." 70 O.S.2011, § 1-108. Consequently, the school district in which a child resides is the district responsible for providing the child with a free public education. As such, for a child admitted to a day treatment program, the district where the facility is located must ensure that the child receives a free public education.[3] 

3.
No limitations identified in the residency statute
apply to children admitted to a day treatment
program.
¶13 The residency statute--70 O.S.Supp.2015, § 1-113--provides certain provisions, limitations, and requirements applicable to children who cannot establish residency in one of the eight ways identified in subsection A of that statute. These provisions, limitations, and requirements address which district is responsible for educating children who cannot establish residency and cost-sharing measures when educational services are provided. None of these provisions, limitations, or requirements apply to children attending day treatment programs.
¶14 First, subsections B and C refer to children who are either not residents of the State or are placed in therapeutic foster care homes. See 70 O.S.Supp.2015, § 1-113(B), (C). For children in a therapeutic foster care home, a receiving school district is not required to enroll the child if that would cause the receiving school district's proportion of students in therapeutic foster family homes to exceed a certain threshold. Id. § 1-113(C). Neither subsection B or C refers in any way to children who may also attend a day treatment program and who have, accordingly, established residency under subsection (A)(6). See id. These provisions thus cannot be read as creating an exception to the residency provisions for such children and are inapplicable to them. 
¶15 Next, subsection D states, in part, that "[w]hen a child does not meet the criteria for residency provided in subsection A of this section and is placed" in any residential facility identified in subsection D, the facility "shall, if the child contends he or she resides in a school district other than the district where the [facility] is located, within eleven (11) days of admittance, notify the school district in which the [facility] is located of the admittance." 70 O.S.Supp.2015, § 1-113(D). Subsection F reads in tandem with subsection D and provides that "[t]he school district in which an entity as described in subsection D of this section exists to serve children in out-of-home placement shall, upon request of the individual or agency operating the entity, provide the educational services to which the children in the entity are entitled . . . ." Id. § 1-113(F) (emphasis added). Together, these provisions clarify that notification under subsection D acts to trigger the provision of educational services to children residing in those facilities, which, in turn, triggers the receiving school district's ability to obtain state aid for such students. Id. 
¶16 On its face, however, subsection D does not apply to children who establish residency through admission to a day treatment program. Subsection D states that it only applies when a child does not meet the criteria for establishing residency under subsection A. Id. § 1-113(D). Admission to a day treatment program is a method of establishing residency under subsection A. See id. § 1-113(A)(6). Thus, subsection D does not apply to children admitted to a day treatment program, and because subsection D does not apply, the related subsection F--incorporating subsection D--likewise fails to apply.
¶17 Finally, subsection E refers to the provision of educational services to children attending other certain residential facilities. Id. § 1-113(E). Day treatment programs are not residential facilities. See 10 O.S.2011, § 175.20. Subsection E thus does not apply. 
¶18 In short, none of the provisions, limitations, or exceptions listed in the residency statute apply to children attending a day treatment program under Section 1-113(A)(6) of Title 70. The plain language of the statute simply does not support their application.

4.
Day treatment programs enjoy some flexibility in
arranging for the provision of educational
services.
¶19 Even though a public school district where a facility with a day treatment program is located must ensure that the children admitted to the facility are receiving educational services, the law does not restrict a day treatment program's ability to contract with an outside school district or even an accredited private school in arranging for the provision of on-site educational services.
¶20 While a day treatment program must meet the standards for educational services set by the Board of Education, 70 O.S.Supp.2015, § 3-104.7, the statute establishing that requirement does not compel the program to contract with the public school district in which it sits. Rather, the rules promulgated pursuant to statute, see id. § 3-104.7(D); OAC 210:35-31-1(a), merely require that a contract be in effect with an accredited school, OAC 210:35-31-2, and go so far as to specify that the on-site educational services may be "provided by public school districts or state accredited private schools" so long as they are in accordance with the standards, OAC 210:35-31-1 (emphasis added). 
¶21 This flexibility enjoyed by day treatment programs is distinct from the restrictions placed on residential facilities. Under the limitations of the residency statute described above, a residential facility as described in subsection D must notify the school district in which it is located "if the child contends he or she resides in a school district other than the district where the entity is located." 70 O.S.Supp.2015, § 1-113(D). Upon the facility's notification and request, the school district in which it sits must "provide the educational services to which the children in the entity are entitled subject to limitations" elsewhere identified. Indeed, 

[n]o person operating such an entity may contract for the provision of educational services with any school district other than the school district in which the entity is located unless the school district in which the entity is located agrees in writing to allow another school district to provide the educational services or unless the person operating the entity contracts with another school district for the provision of educational services to be provided through remote Internet-based courses.

Id. § 1-113(F) (emphasis added). Day treatment programs are not so restricted and plainly enjoy greater contracting options. 
¶22 Regardless, if a day treatment program fails to secure a contract with either an outside public school district or an accredited private school, the school district in which it sits must provide educational services to the children admitted there. First, the residency statute compels the school district to provide educational services to all students establishing residency in their districts, which includes facilities with day treatment programs. Compare 70 O.S.2011, § 1-114(A), with 70 O.S.Supp.2015, § 1-113(A), and 70 O.S.2011, § 1-108. Second, ensuring that children receive educational services at day treatment programs enables the State to maintain these children in the less restrictive alternative to inpatient treatment. See 43A O.S.2011, § 5-502(7). And, third, it would be nonsensical for the law to compel a school district in which a residential facility is located to provide educational services to children who do not meet the residency requirement, but not require the school district to do the same for children admitted to a day treatment program who do meet the residency requirement. 
¶23 Having answered who must provide services to children admitted to a day treatment program, we next consider your questions respecting what "educational services" entails and the manner in which such services may be provided.

B.
Educational services must meet the minimum standards set by
the Board and may also include other educational services, but
such services cannot be provided through an alternative school
or alternative education program.
1.
The standards for the provision of on-site
educational services at day treatment programs
require public school districts or state accredited
private schools to develop a local plan meeting
the minimum requirements identified by statute
and regulation.
¶24 Section 3-104.7 of Title 70 requires the Board to establish standards for on-site educational services at day treatment programs that address the following areas, at a minimum: "teacher certification requirements, number of hours taught, adequacy of facilities, and educational plans" that include "plans for transition into the regular school setting." Through the regulations implemented by the Department of Education[4] in furtherance of this statute, the Department placed the onus on the public school district or accredited private school providing such services to create a local plan that specifically addresses the minimum requirements identified in statute. OAC 210:35-31-3. The local plan must also include: (1) class size and student/teacher ratios in compliance with state accreditation standards that allow for an effective learning environment, (2) "appropriate curriculum, structure, interaction, and reinforcement strategies," (3) collaborative efforts between school personnel, facility staff, parents or guardians, and other agencies, and (4) adequate time for teaching staff to plan and prepare lesson plans and to consult with facility staff and parents or guardians. OAC 210:35-31-3(b)(2)-(5). Thus, pursuant to statute and its implementing regulations, school districts or accredited private schools working with day treatment programs must develop a local plan that addresses the minimum educational services identified. Nevertheless, the regulation confirms that these services must be "provided directly by the school and under the supervision of the accredited school." OAC 210:35-31-3.
¶25 While the specifics of any particular local plan is beyond the scope of an Attorney General Opinion, regulations do provide some guidance to schools drafting them. First, upon application by the school district and approval by the Board, teachers may teach subjects in which they are not certified if they otherwise hold teaching certifications. OAC 210:35-31-4(a). Second, the average school day for children admitted to the day treatment program may be shortened, but, absent verifiable cause noted in a child's treatment plan, cannot be less than three hours a day. OAC 210:35-31-5. Third, these services must be provided on-site. See 70 O.S.Supp.2015, § 3-104.7(B)(C) (providing the standards for on-site educational services); OAC 210:35-31-1(b) ("The Standards in this Subchapter shall apply to onsite educational services provided by public school districts or state accredited private schools . . . .") (emphasis added). And, finally, "[i]nstruction in an appropriate educational program shall be based on individual needs and should address reintegration into a full school day of six (6) hours," OAC 210:35-31-4(b), again emphasizing the goal of reintegration of the child into a regular school day. 

2.
Other educational services may be specified in
the contract between the day treatment program
and the public school or accredited private
school providing services, but they are not
required.
¶26 The regulation governing local plans as described in the last section additionally provides:

[c]ontractual agreements, as required by the standards in this Subchapter, shall be jointly developed by the school and the day treatment program and shall be signed by representatives with the authority to represent the governing boards. Services shall be provided pursuant to contract and in accordance with applicable standards and laws. Contractual agreements shall address financial responsibilities and services to be provided by each party to the agreement in accordance with the standards in this Subchapter.

OAC 210:35-31-3(c). The regulation then provides that the contractual agreement shall include, at a minimum, the educational services identified above: teacher certification requirements, number of hours taught, adequacy of facilities, and educational plans. Id. (emphasis added)
¶27 In addition to the minimum requirements identified, the Oklahoma School Code provides that the facility and the school may agree to the provision of other educational services as identified at 70 O.S.2011, § 1-107, which "may include health activities, school lunch programs, audiovisual education, safety education, vocational rehabilitation, education of exceptional and handicapped children, playground and physical education activities and such other special services, functions and activities as may be authorized by law or by regulation of the State Board of Education." Id. (emphasis added). A facility and a school may contractually agree to the school's provision of these other educational services, but the school is not required to provide them based on the plain language of the statute and the regulation setting service minimums--neither of which require these other educational services. 
¶28 This is distinguishable from our conclusion in A.G. Opinion 09-15. There, we reviewed the provision of educational services to children residing in Department of Human Services ("DHS") contracted group homes, i.e. residential facilities. A.G. Opin. 09-15, ¶ 1. We explained that the provision of educational services to children in residential facilities falls under Section 1-113(F) of Title 70. Id. ¶ 8. Further, we quoted Subsection F, id., which states "[e]ducational services provided shall meet or exceed state accreditation standards," 70 O.S.Supp.2015, § 1-113(F)(3). Because children in residential facilities must receive educational services meeting or exceeding state accreditation standards, we concluded that those children were entitled to the same educational services as children attending public school generally, inclusive of the other educational services specified at Section 1-107 that might be provided to them. See A.G. Opin. 09-15, ¶ 9. Nevertheless, those conclusions in A.G. Opinion 09-15 do not apply to children receiving on-site educational services at day treatment programs. 
¶29 As explained in detail above, residential facilities do not meet the requirements for residency under Section 1-113(A) of Title 70. See Part III(A)(3) above; see also 70 O.S.Supp.2015, § 1-113(A),(D). Instead, the provision of educational services for children in residential facilities falls under Section 1-113(D). That subsection and the related subsection F--upon which A.G. Opinion 09-15 was premised--are inapplicable to day treatment programs. Thus, the requirements listed under those subsections--including the standards set for the provision of educational services to children in residential facilities--do not apply to children admitted to day treatment programs. Moreover, as explained in detail at Part III(B)(1) above, day treatment programs have their own unique statutes and rules governing the standards for the provision of educational services in those programs.
¶30 Nor is there any other reason why A.G. Opinion 09-15 must apply to day treatment programs. Children attending day treatment programs are not similarly situated to children residing at a DHS-contracted residential facility. Children at day treatment programs attend a shortened school day so that other treatment goals may be pursued. OAC 210:35-31-5(a). And they do so with the goal of reintegrating into the regular school setting, OAC 210:35-31-5(b)--one which must meet or exceed state accreditation standards applicable to the regular school day, including the requirement that other educational services be provided. In short, children receiving on-site educational services at day treatment programs will ultimately receive the other educational services that children attending a regular school day receive, but might not receive them while temporarily admitted to a day treatment program, depending on the contract governing the facility and their own individual needs.
¶31 Nevertheless, much as we concluded in A.G. Opinion 09-15, the school providing educational services to children admitted to a day treatment program may be required to provide the other educational services identified in Section 1-107 if an individual child's IEP or 504 Plan provides for those services. We address this below.

3.
Even though the standards set by the Board do
not require the provision of other educational
services, the school providing on-site educational
services to children at a day treatment program
may, nevertheless, be required to provide them if
they also qualify as "related services" under an
individual child's IEP or 504 Plan.
¶32 Just as the district of residence must ensure the children in the district receive a free public education, the district of residence must also ensure that a child with an individualized education program ("IEP") or a 504 Plan receives the services specified in those documents.
¶33 The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1487 (2012), is a federal law through which public schools in the several states receive federal assistance for children with disabilities. The IDEA defines "child with a disability" as a child:

with intellectual disabilities, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance (referred to in this chapter as 'emotional disturbance'), orthopedic impairments, autism, traumatic brain injury, other health impairments, or specific learning disabilities; and . . . who, by reason thereof, needs special education and related services.

Id. § 1401(3)(A) (emphasis added). That definition can also include children between the ages of three and nine who are experiencing developmental delays. Id. § 1401(3)(B). For a State to qualify for federal assistance under the IDEA, it must provide to children with disabilities a "free appropriate public education," id. §§ 1400(d)(1)(A), 1412(a)(1)(A), defined as special education and related services that are provided at public expense, that meet the standards set by the State, that include appropriate schools, and that are in conformity with the IEP required under the IDEA, id. §§ 1401(9), 1412(a)(4) (emphasis added); see also 34 C.F.R. § 300.17. 
¶34 IDEA-implementing regulations define "special education" as "specially designed instruction" provided at no cost to the parents and that meet the unique needs of the child. 34 C.F.R. § 300.39(a)(1). This instruction can occur in the classroom or "in hospitals and institutions, and in other settings." Id. Further, the regulations define "related services" as those other supportive services required to assist the child, and can include transportation, occupational and speech therapy, and recreation, just to name a few. Id. § 300.34(a).
¶35 The IEP is "a written statement for each child with a disability that is developed, reviewed, and revised in accordance with [20 U.S.C.A § 1414]." 20 U.S.C. § 1414(d)(1)(A)(i). The IEP must include categories of information that address a full range of needs including, but not limited to, present academic levels and functional performance, goals and how to measure them, supplementary services and aids the child may need, whether and to what extent the child should attend the regular school day, accommodations, and whether the child should participate in standardized assessments. Id. Consequently, whether the child requires related services--and which ones--must be specified in the IEP.
¶36 Development of the IEP is a team effort that includes the parent, the special and general education teachers, a representative of the school, and sometimes the child. Id. § 1414(d)(1)(B). The IEP must be reviewed by the team at least annually. Id. § 1414(d)(4)(A)(i). And, importantly, 

[i]n the case of a child with a disability who transfers school districts within the same academic year, who enrolls in a new school, and who had an IEP that was in effect in the same State, the local educational agency shall provide such child with a free appropriate public education, including services comparable to those described in the previously held IEP, in consultation with the parents until such time as the local educational agency adopts the previously held IEP or develops, adopts, and implements a new IEP that is consistent with Federal and State law.

Id. § 1414(d)(2)(C)(i)(I).
¶37 In addition to the IDEA, Section 504 of the Rehabilitation Act of 1973 is a civil rights law that prohibits discrimination on the basis of disability and is applicable to public schools. 29 U.S.C.A. § 794 (a), (b)(2)(B). If a child does not qualify as a child with a disability under the IDEA, he or she may qualify under Section 504 as the definition of disability is broader than that under the IDEA. "Disability" under Section 504 is "a physical or mental impairment that constitutes or results in a substantial impediment . . . ." Id. § 705(9)(A). Implementing regulations further provide that to be protected under Section 504, a student must (1) "[have] a physical or mental impairment which substantially limits one or more major life activities," (2) have a record of such impairment, or (3) "[be] regarded as having such an impairment." 34 C.F.R. § 104.3(j). Section 504 requires school districts to provide a free appropriate public education to such children just as they would under the IDEA. Id. § 104.3(l)(2). And a 504 Plan must be developed for the child.
¶38 Administration of the IDEA is the responsibility of the State, which must conform its rules, regulations and policies to the IDEA for receipt of federal funds. 20 U.S.C.A. § 1407(a). In Oklahoma, the State Board of Education is empowered "to accept and disburse any grants or funds that may be matched by or received from the federal government for the education of exceptional children and to make necessary rules and regulations for such purpose." 70 O.S.2011, § 13-107. Section 13-101 of Title 70 incorporates the definition of children with disabilities from the IDEA into Oklahoma law and provides that "[i]t shall be the duty of each school district[5] to provide special education and related services for all children with disabilities as herein defined who reside in that school district in accordance with the [IDEA]." 70 O.S.2011, § 13-101 (emphasis added). It further provides:

This duty may be satisfied by:
1. The district directly providing special education for such children;
2. The district joining in a cooperative program with another district or districts to provide special education for such children;
3. The district joining in a written agreement with a private or public institution, licensed residential child care and treatment facility or day treatment facility within such district to provide special education for children who are deaf or hard-of-hearing, children who are blind or partially blind or other eligible children with disabilities; or
4. Transferring eligible children and youth with disabilities to other school districts which accept them and provide special education and related services for such children, with the district in which the child resides paying tuition therefore as hereinafter provided. . . . 

Id. Regardless of how a district satisfies this obligation, the duty to ensure that children with disabilities receive a "free appropriate public education"--defined as both special education and related services--remains with the district of residence.
¶39 As has been established at Part III(A)(2), the location of the facility with a day treatment program in which the child has been admitted and receives educational services establishes the district of residence for the child. Thus, if the child admitted to that program has an IEP or 504 Plan, the duty to ensure that the admitted child receives the free appropriate public education under IDEA to which he or she is entitled falls to the district of residence, see id. § 13-101, much as the obligation to provide the constitutionally-guaranteed right to a free public education also falls to the district of residence, id. § 1-108. Indeed, even if the child transfers into the district during the academic year to attend the day treatment program, the district must provide that child with services comparable to those described in the child's currently-held IEP. See 20 U.S.C.A. § 1414(d)(2)(C)(i)(I).
¶40 Ensuring that the child receives the special education and related services that have been identified in the child's IEP or 504 Plan means that the district may be required to provide more than the minimum services that are mandated by the standards for day treatment programs, including "other educational services" as defined at Section 1-107 of Title 70. For example, if a child's IEP or 504 Plan specifies that the child must receive transportation as a related service, then the district will be required to transport the child to the day treatment program. Regulations implementing the statutes governing transportation state that "[t]he local school district is responsible for providing transportation for those students with disabilities identified under the . . . IDEA for whom transportation has been identified as 'related service' necessary to enable the students to receive the educational services outlined in their . . . IEPs." OAC 210:30-5-3. This is only one of many potential examples where a district may be required to provide related services. Of course, whether a district must provide other educational services to any particular child and which ones far exceed the scope of an Attorney General Opinion. Nevertheless, it is apparent that a district may be required to provide such services if a child has an IEP or 504 Plan specifying them as related services.

4.
A public school may not provide educational
services at a day treatment program through an
alternative school or in the form of an alternative
education program.
¶41 You ask whether the educational services provided on-site may take the form of an alternative education program. Section 175.20 of Title 10 provides that "[a] day treatment program shall not mean an alternative school or alternative education program as such terms are defined in rules promulgated by the State Board of Education." 10 O.S.2011, § 175.20(A). This statute unambiguously provides that an alternative education program cannot serve as a day treatment program. Additionally, when the statutes and regulations governing alternative education programs are compared with those governing day treatment programs, fundamentally divergent goals emerge such that it was not likely the Legislature's intent that educational services at day treatment programs be provided in the form of an alternative education program either. 
¶42 First, Sections 1210.561 through 1210.569 of Title 70 govern alternative education programs. Section 1210.566 provides that "[e]ach year by December 1, every school district that serves middle school, junior high school and secondary school students shall conduct and report to the State Department of Education a needs assessment to identify those students in grades six through twelve who are most at risk of not completing a high school education for a reason other than that identified in Section 13-101 of this title . . ." 70 O.S.2011, § 1210.566(A) (emphasis added). Section 13-101 of Title 70, as explained in the previous Part, is the statute governing special education and related services for children with disabilities. 70 O.S.2011, § 13-101. Children requiring special education services are those falling under the IDEA and who are in need of an IEP or 504 Plan. Id. Thus, at-risk children for alternative education purposes cannot be those who are at-risk because of disabilities. But, as established at Part III(B)(3), children admitted to day treatment programs may, in fact, have IEPs or 504 Plans. 
¶43 Second, as provided at Section 1210.566, alternative education programs exist to provide an alternate means for educating youth at risk of not graduating. See 70 O.S.2011, § 1210.566(A). Further, the implementing regulations for alternative education programs define "at-risk" as "a student whose present or expected status indicates they might fail to complete their secondary education for reasons which may include academic deficiency, behavioral difficulties, excessive absences, pregnancy or parenting, family issues, substance abuse, financial issues, physical or mental health issues, juvenile justice involvement, or other such factors, not including disability status." OAC 210:35-29-2. While the definition certainly includes mental health issues, statute provides that "[e]ach alternative education program of a school district shall receive funding based on the combined number of dropouts and students within the district who have been referred to a county juvenile service unit, a county juvenile bureau or who have been committed to the custody of the Office of Juvenile Affairs." 70 O.S.2011, § 1210.568(D). The goal is graduation.
¶44 Contrarily, children in day treatment programs are admitted because they are in need of mental health treatment and because such programs are the "less restrictive alternative to inpatient treatment." 43A O.S.2011, § 5-502(7). The goal repeated throughout the statutes and regulations governing these programs is reintegration in the regular school day--not graduation through an alternative school program. See 10 O.S.2011, § 175.20; OAC 210:35-31-5; OAC 210:35-31-7. That the goals of the alternative education program and the day treatment program diverge is seen the most clearly in their respective regulations governing abbreviated day schedules.
¶45 In the implementing regulations for alternative education programs, "abbreviated school day" is defined as:

(A) A school day which consists of not less than four (4) hours and twelve (12) minutes per day devoted to academic instruction for the locally approved 180 day school calendar; or
(B) A school day which may consist of less than four (4) hours and twelve (12) minutes per day devoted to academic instruction, provided that students in alternative education programs receive at least seven hundred fifty-six (756) hours of academic instruction per school year. 

OAC 210:35-29-2. These totals apply to the entire academic year. But children admitted to day treatment programs may spend as little as three hours a day on academic pursuits--or less, depending on the child's individual treatment plan--with the goal of the child's reintegration plan being to attend "a full school day of six (6) hours," OAC 210:35-31-5. Further, admission to a day treatment program is not long term and must be reviewed every three months. See OAC 317:30-5-241.2(f)(6). That is, the rules governing the abbreviated school day for children in alternative education programs apply all year and are designed with the goal of graduation in mind. Conversely, the rules governing the abbreviated school day for children in day treatment programs must be reviewed quarterly and are designed with the goal of reintegration in mind.
¶46 In short, even though there may be overlap between these populations of children, they are distinct, and the laws addressing them serve different purposes. Consequently, educational services provided to children admitted to day treatment programs may not be provided in the form of an alternative education program.

C.
The costs associated with the provision of on-site educational
services at a day treatment program must be addressed in the
contract between the facility and the school providing the educational services to the children admitted there.
¶47 The financial responsibility for the provision of educational services at day treatment programs largely depends on the terms of the contract between the facility and the educational provider. While the facility has some flexibility in who it contracts with, see Part III(A)(4), that a contract be in place is clearly required by the laws and regulations applicable to day treatment programs. See 70 O.S.Supp.2015, § 3-104.7 (licensing only permitted if facility meets the standards set by the State Board of Education); OAC 210:35-31-2, 210:35-31-3 (setting the standards and requiring that a contract be in place). Moreover, "[c]ontractual agreements shall address financial responsibilities and services to be provided by each party to the agreement . . . ." OAC 210:35-31-3(c). Nevertheless, statute and regulation provide two guideposts for such contracts: (1) the public school district receives state aid for children admitted to day treatment programs which should be considered during negotiations, and (2) an individual child's IEP requires the public school district to cover the costs of other educational services if those services are also related services. 
¶48 First, "average daily membership" or "ADM" is "the average number of pupils present and absent in a school district during a school year." 70 O.S.2011, § 18-107(2). A pupil must be a legal resident of a district as provided for in Section 1-113 of Title 70--the residency statute--to be counted in the district's ADM. 70 O.S.2011, § 18-111. Further, the calculation of state aid to school districts is based on the legal ADM. OAC 210:25-3-2. In other words, the school district in which a facility with a day treatment program is located should count the children admitted to the program in its average daily membership, and when it does, the school district receives state aid for those children. 
¶49 A regulation governing day treatment programs, however, provides that "[s]tate aid for educational services by accredited schools shall be in accordance with the provisions of 70 O.S.[2011,] § 18-110." OAC 210:35-31-3(e) (emphasis added). That section governs adjustments and limitations in disbursing state aid based on residency. In pertinent part, Section 18-110 includes the adjustments and limitations for aid to state institutions and out-of-home placements described in subsections D, E, and F of Section 1-113. But as addressed at Part III(A)(3), those subsections do not apply to day treatment programs. Accordingly, it is unclear why this implementing regulation refers to the section governing adjustments and limitations. Regardless, there is no question as to the residency of a child admitted to a day treatment program. See Part III(A)(2). Accordingly, the school district's receipt of state aid should be considered when the facility and the district negotiate costs for the educational services that the district is required by law to provide. See Part III(A)(1), (2).
¶50 Second, the State Department of Education's regulation applicable to the local plan provides that "[t]he cost for related services, therapies, treatments, or support services for eligible students shall be the responsibility of the facility unless otherwise agreed by the contractual parties or as otherwise specified in the IEP." OAC 210:35-31-3(d)(2) (emphasis added). As discussed at Parts III(B)(2)-(3), the school has no obligation to provide other educational services to the children admitted at the day treatment program unless those "other educational services" are also "related services" under an individual child's IEP or 504 Plan. Thus, it is no surprise that the cost for providing those services is borne by the facility unless specifically required by an individual child's IEP or 504 Plan. In the event a child has an IEP or 504 Plan, the school district must pay for those services, especially since the school receives additional federal dollars for them.

D.
Supervision of facilities providing day treatment programs is a
joint effort in which the State Department of Health, the Oklahoma Health Care Authority, the Department of Mental ealth and Substance Abuse Services, and the State Board of Education all participate, although the Oklahoma Health Care
Authority is ultimately responsible for licensing and oversight.
¶51 Lastly, all parties working with children admitted to day treatment programs share oversight responsibility of these programs. Nevertheless, the Oklahoma Health Care Authority is the entity primarily responsible for ensuring compliance, aided by the Oklahoma State Department of Education's Office of Accreditation. 
¶52 First, the facility and the school must work together to provide services to the children admitted to day treatment programs. OAC 210:35-31-3(b)(4). The facility is responsible for creating a child's individualized treatment plan, which requires collaboration between the facility staff and the educational system. OAC 210:35-31-7(a). The school is responsible for the educational plan, inclusive of its academic content, although both the treatment team and the educational staff direct the educational plan. OAC 210:35-31-7(b). Thus, as is obvious, facility staff and the school providing educational services share responsibility for both the individualized treatment plan and the educational plan, which would include shared responsibility for classroom supervision and student discipline. Put simply, the regulation calls for a high degree of cooperation between the facility and the school for the purpose of reintegrating the child into the regular school setting. OAC 210:35-31-7(a). 
¶53 Just as the facility and the school must work together, the various boards of health and the State Department of Education must also cooperate. Section 603.4 of Title 10 requires the State Board of Health, the Board of Mental Health and Substance Abuse Services, and the Oklahoma Health Care Authority to promulgate rules establishing standards for various aspects of day treatment programs. But that section specifically requires the Oklahoma Health Care Authority to "monitor compliance of outpatient hospital day treatment services with the standards in the Medical Providers-Hospital Specific Manual." Id. And "[a]ny program found to be out of compliance with such standards shall be subject to cancellation of its authorization for day treatment services within its contract with the Oklahoma Health Care Authority according to rules governing such contract cancellations." Id. Thus, while the various boards play a part, the Oklahoma Health Care Authority is specifically tasked with contract cancellation if a program is found to be out of compliance, and it is responsible for monitoring the program at least once annually to ensure that compliance is achieved. See OAC 210:35-31-2(b). 
¶54 Further, as has been addressed throughout this Opinion, the State Board of Education must establish the standards for on-site educational services provided at day treatment programs, inclusive of teacher supervision, 70 O.S.Supp.2015, § 3-104.7(B); OAC 210:35-31-1 (establishing standards), and "[n]o facility [providing a day treatment program] shall be licensed pursuant to provisions of state law unless the facility meets the standards for educational services established by the State Board of Education," id. § 3-104.7(C). The Board's Office of Accreditation monitors school districts' compliance with laws and regulations and would be the entity to enforce licensure status. Thus, if that Office found evidence that the educational services provided at a day treatment program failed to meet the standards, it would have an obligation to notify the facility and the Oklahoma Health Care Authority, as that entity is ultimately responsible for the contract with the facility. That is, the Oklahoma Health Care Authority and the Department's Office of Accreditation, in addition to other boards of health, must exhibit a high degree of cooperation and must work together to ensure children admitted to day treatment programs receive the services they require.

¶55 It is, therefore, the official opinion of the Attorney General that:
1. A facility with a day treatment program in which a child has been admitted and is receiving on-site educational services establishes residency for that child for the purposes of that child's education. 70 O.S.Supp.2015, § 1-113(a).
2. The public school district in which a facility with a day treatment program is located must ensure that the children admitted there receive a free public education, and are, thus, ultimately responsible for the provision of on-site educational services. See 70 O.S.2011, §§ 1-114(A), 1-108. 
3. Because admission of a child to a day treatment program establishes residency for educational purposes, the limitations identified in 70 O.S.Supp.2015, § 1-113(B)-(F) do not apply to day treatment programs.
4. Nevertheless, a day treatment program enjoys contracting flexibility and may contract with an outside school district or an accredited private school when arranging for the provision of on-site educational services for children admitted to the program. 70 O.S.Supp.2015, § 3-104.7; OAC 210:-35-31-1. The school district in which a day treatment program sits must provide educational services to the children admitted there if a day treatment program fails to secure a contract with either an outside public school district or an accredited private school. 
5. Pursuant to regulations, the standards promulgated by the State Board of Education for day treatment programs set minimum requirements for educational services that must be expressed through a local plan. The day treatment program and the school providing those educational services must jointly develop a contractual agreement that references and includes the local plan as developed by the school and which must address, at a minimum: (1) teacher certification requirements; (2) number of hours taught; (3) adequacy of facilities; (4) educational plans that include plans for transition into the regular school classroom; (5) class size and student/teacher ratios in compliance with state accreditation standards that allow for an effective learning environment; (6) "appropriate curriculum, structure, interaction, and reinforcement strategies;" (7) collaborative efforts between school personnel, facility staff, parents or guardians, and other agencies; and (8) adequate teacher planning periods. 70 O.S.Supp.2015, § 3-104.7; OAC 210:35-3-1-3.
6. The school providing the on-site educational services is also required to provide other educational services such as occupational, physical, and speech therapy; meals; or transportation if those services are "related services" required by a particular child's IEP or 504 Plan. See 20 U.S.C.A. § 1414(d); 70 O.S.2011, § 13-101.
7. An alternative school or an alternative education program cannot serve as a day treatment program. 10 O.S.2011, § 175.20(A). Nor can the educational services provided on-site at a day treatment program take the form of an alternative education program.
8. The contractual agreement between the facility with a day treatment program and the school must address the financial responsibility for educational services and other educational services covered by each party to the agreement. OAC 210:35-31-3(c). In negotiating the financial responsibility of the respective parties, two guideposts should be considered: (1) the public school district receives state aid for children admitted to the day treatment program, 70 O.S.2011, § 18-110(C), and (2) an individual child's IEP or 504 Plan may require the public school district to cover the costs of other educational services, like occupational, physical, and speech therapy; transportation; or meals if they qualify as "related services" under the child's IEP or 504 Plan, 20 U.S.C.A. § 1414(d), 70 O.S.2011, § 13-101.
9. The facility with a day treatment program and the school providing on-site educational services share responsibility for both the individualized treatment plan and the educational plan, and must, therefore, share responsibility for classroom supervision and classroom discipline. OAC 210:35-31-3(b)(3)-(7). The school district that developed the educational plan would, nevertheless, be responsible for supervising its educational content and the teachers providing those services. OAC 210:35-31-3(a).
10. A facility with a day treatment program is required to provide on-site educational services that meet the standards set by the State Board of Education. 70 O.S.Supp.2015, § 3-104.7. If it fails to provide on-site educational services, the Board's Office of Accreditation would be required to report that to the facility and to the Oklahoma Health Care Authority--the entity charged with oversight responsibility of facilities with day treatment programs and that manages those contracts. 10 O.S.2011, § 603.4. 

E. SCOTT PRUITT
ATTORNEY GENERAL OF OKLAHOMA
CARA N. RODRIGUEZ
GENERAL COUNSEL TO THE ATTORNEY GENERAL 

FOOTNOTES
[1] While the State Board of Health is tasked with promulgating rules for day treatment programs, see 10 O.S.2011, § 603.4, that function was fulfilled by the State Department of Health, an entity comprising the State Commissioner of Health and the State Board of Health, 63 O.S.2011, § 1-105, and which may "[p]erform any and all health-related services . . . as prescribed by . . . the State Board of Health," 63 O.S.Supp.2015, § 1-105e(A)(3).
[2] While the State Board of Mental Health and Substance Abuse Services is tasked with promulgating rules for day treatment programs, the State Department of Mental Health and Substance Abuse Services fulfilled that obligation, an entity governed by the State Board of Mental Health and Substance Abuse Services and which exercises "all functions of the state in relation to the administration and operation of all state facilities for the care and treatment of the mentally ill and drug- or alcohol-dependent persons." 43A O.S.2011, § 2-101(A)(2), (3). 
[3] Regulation requires, however, that the facility operating a day treatment program notify the local board of education in the school district of its anticipated educational needs when it first locates to the school district. OAC 210:35-31-3(f). The district must be given at least ninety calendar days from the date of this one-time notice to provide the educational services requested. Id. 
[4] The State Department of Education is the department of state government housing the Board of Education and the State Superintendent of Public Instruction who, together, are charged by constitutional provision and statute with the responsibility of directing and supervising the public school system of the State. 70 O.S.2011, § 1-105. The Board governs the public school system, id. § 1-105(B), and the State Superintendent is the Board's Executive Officer and has control of and directs the Department, id. § 1-105(C). 
[5] Pursuant to the rules implementing the IDEA, the public school district is the local educational agency who performs the services contemplated by the IDEA. 34 C.F.R. § 300.28(a).

 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1956 OK 221, 301 P.2d 212, 
STEMMONS, INC. v. UNIVERSAL C.I.T. CREDIT CORP.
Discussed

 
2006 OK 42, 142 P.3d 390, 
MCCLURE v. CONOCOPHILLIPS COMPANY
Discussed

 
2000 OK 2, 995 P.2d 1124, 71 OBJ 111, 
Tulsa Co. F.O.P., Lodge No. 188 v. Board of County Commissioners of Tulsa Co.
Discussed

 
1943 OK 299, 141 P.2d 586, 193 Okla. 112, 
PUBLIC SERV. CO. v. PARKINSON
Discussed

Title 10. Children

 
Cite
Name
Level

 
10 O.S. 603.4, 
Committee for Day Treatment Standards - Creation - Duties - Rules
Discussed at Length

 
10 O.S. 175.20, 
Day Treatment Program
Discussed at Length

Title 63. Public Health and Safety

 
Cite
Name
Level

 
63 O.S. 1-105e, 
Department of Health - Duties - Collection of Fees for Certification of Compliance - Health Maintenance Organizations
Cited

 
63 O.S. 1-105, 
State Department of Health Created
Cited

Title 70. Schools

 
Cite
Name
Level

 
70 O.S. 1210.568, 
Implementation of Statewide System of Alternative Education Programs
Cited

 
70 O.S. 1-105, 
State Department of Education - Definition - Agencies of State
Cited

 
70 O.S. 1-107, 
Educational Services - Enumeration
Cited

 
70 O.S. 1-108, 
School District - Definition
Discussed

 
70 O.S. 1-113, 
Determination of Child's Residence
Discussed at Length

 
70 O.S. 1-114, 
Right to Attend School Free of Charge
Discussed at Length

 
70 O.S. 3-104.7, 
On-Site Educational Services
Discussed at Length

 
70 O.S. 13-101, 
Special Services for Exceptional Children - Cooperative Provide Special Education
Discussed at Length

 
70 O.S. 13-107, 
Federal Funds - Acceptance by State Board of Education
Cited

 
70 O.S. 18-107, 
Definitions
Cited

 
70 O.S. 18-110, 
Adjustments and Limitations
Discussed

 
70 O.S. 18-111, 
Pupils' Average Daily Attendance - Requirement of Legal Residency of District
Cited

 
70 O.S. 1210.566, 
Notification of Provisions Relating to Alternative Education - Needs Assessment - Proposed Plan
Discussed

Title 43A. Mental Health

 
Cite
Name
Level

 
43A O.S. 5-502, 
Definitions
Discussed at Length

 
43A O.S. 2-101, 
Department of Mental Health and Substance Abuse Services
Cited